NEWAYS, INC., a Utah corporation,
Plaintiff and Appellant,

v.

Bob McCAUSLAND, Defendant
and Appellee.

No. 940578.

Supreme Court of Utah.

Dec. 16, 1997.

James L. Thompson, Salem, and Richard L. Halliday, Nancy Mishmash, Sandy, for plaintiff and appellant.

Bob McCausland, Mission Viejo, CA, pro se.

HOWE, Justice:

A Utah plaintiff appeals from the trial court's dismissal of its civil action for lack of personal jurisdiction over a California defendant. We must decide whether defendant's

telephone calls to Utah for the alleged purpose of soliciting orders for delivery of papaya capsules from Peru to Utah via California plus the acceptance of one check and regular wire transfers of funds from Utah constitute a prima facie showing of personal jurisdiction under our long-arm statute, Utah Code Ann. § 78–27–24.

## FACTS

Plaintiff Neways, Inc., is a Utah corporation which manufactures and markets personal care products. Defendant Bob McCausland is a resident of California. On or about September 1, 1992, Neways purchased the assets of an existing company, Images and Attitudes, Inc., which also manufactured and marketed personal care products and nutritional supplements. At the time of the purchase, Images was manufacturing a nutritional supplement entitled "Quick Trim," consisting of four tablets and one capsule. McCausland was supplying Images with the papaya capsule used in this product. Neways subsequently changed the name of the diet aid to "Quickly."

Neways alleges that sometime after September 1, 1992, McCausland telephoned Neways' operations manager in Salem, Utah, to solicit orders for papaya capsules and that, as a result, McCausland began to supply Neways with the papaya capsule used in Quickly. The affidavit of Neways' operations manager Thomas W. Mower, Jr., avers:

> Following the purchase of assets [of Images] by Plaintiff, Defendant contacted me at my place of employment in Salem, Utah to inquire into Plaintiff's need for a papaya capsule. In this phone conversation Defendant represented that he was the manufacture [sic] of an all natural papaya capsule. He stated that he imported the papaya from Peru and then manufactured the capsule based on a unique formulation.[1]

McCausland responds that Images' regional vice president first contacted him from her office in Irvine, California, which resulted in McCausland's supplying the capsules to Images. According to his affidavit:

> 3. . . . When the name changed to Neways, business continued to be conducted as usual. Either I would call the Utah office to determine the quantity of material that was needed, or they would call me. But all contacts with anyone from Utah were made by telephone, and just for the purpose of determining the amount of the order.

> 4. I did not ever say I manufactured a papaya capsule, because the fact is that I did not manufacture the capsules. I acted only as a broker for a group in Peru. I delivered the product in California, and what Neways or Images did with it after that . . . was of no concern to me.

McCausland avers that his only connection with Utah "was making a telephone call every few months to find out how much product needed to be shipped to D & F [a California packager], receiving wired funds from Utah, and receiving one check from Utah." He maintains that his only pay for his involvement came from a broker's and finder's fee which he received from the Peruvian company. D & F Industries of Orange, California, packaged the capsules in a cellophane wrap and then shipped them to Utah, where Images and later Neways packaged them with other tablets to constitute the diet aid.

In September of 1993, Neways received a communication from the Food and Drug Administration (FDA) indicating that a complaint about Quickly had been filed. Subsequent lab tests revealed that the papaya capsules contained Furosemide, a prescription diuretic. Consequently, the FDA required Neways to recall all of the outstanding Quickly, to forego marketing its remaining inventory of Quickly, and to cease all further manufacturing and marketing of the diet aid.

Neways commenced this action against defendant for an alleged breach of contract and general and specific breaches of warranties.

---

1. Mower's affidavit further states, "[McCausland] detailed the ingredients of his papaya capsule as papaya, kelp, garlic, and lactose. Defendant further claimed that this formulation had great ef-fectiveness in achieving weight loss and that no other papaya capsule would have the same effect."

McCausland responded with a motion to dismiss for lack of personal jurisdiction. He supported the motion with a memorandum and affidavits. Following the submission of further affidavits, memoranda, and motions, Neways requested oral argument. The trial court denied the request and, acting solely on the basis of the documentary evidence, dismissed the action for lack of personal jurisdiction over defendant. The court determined that McCausland had not entered into or performed a contract in Utah. The order of dismissal stated:

> [T]he court does not have personal jurisdiction of the defendant for the reason that there has not been substantial evidence presented of sufficient contacts between the defendant and the State of Utah to give Utah's courts jurisdiction over the defendant under Utah Code Ann. § 78–27–24, and defendant does not have sufficient contacts with the State of Utah to satisfy Utah's long-arm statute.

Utah's long-arm statute subjects any person to personal jurisdiction in Utah concerning any claim arising from the commission of certain acts, including:

> (1) the transaction of any business within this state;
>
> (2) contracting to supply services or goods in this state;
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty[.]

Utah Code Ann. § 78–27–24. In its memorandum decision, the trial court stated: "Case law has interpreted the statute to require substantial activity with some degree of continuity. *Plaintiff has the burden of showing that the defendant engaged in substantial and continuous activity in the State of Utah.*" (Emphasis added.)

Neways appeals, contending that the trial court erred by failing to hold a hearing, by failing to resolve evidentiary conflicts in the evidence in favor of Neways, and by requiring more than a prima facie showing of jurisdiction. McCausland responds that the trial court has discretion regarding an evidentiary hearing and did not err in that or other particulars.

## ANALYSIS

### I. PROCEDURE FOR DETERMINING JURISDICTION

■ We addressed the proper procedure for the trial court's determination of jurisdiction in *Anderson v. American Society of Plastic Surgeons*, 807 P.2d 825 (Utah 1990), in which we approved the federal rule 12 guideline as suitable for our courts. *Id.* at 827. Under the approved guidelines, the court "may determine jurisdiction on affidavits alone, permit discovery, or hold an evidentiary hearing." *Id.* However, "[i]f it proceeds *on documentary evidence alone* (i.e., the first two methods), *the plaintiff is only required to make a prima facie showing of personal jurisdiction.*" *Id.* (emphasis added). In addition, "[t]he plaintiff's factual allegations are accepted as true unless specifically controverted by the defendant's affidavits or by depositions, but *any disputes in the documentary evidence are resolved in the plaintiff's favor.*" *Id.* (emphasis added). Furthermore, *"[t]he trial court must not weigh the evidence unless a hearing is held."* *Id.* (emphasis added). We concluded in *Anderson* that "[u]nless an evidentiary hearing is held, the plaintiff must prove jurisdiction at trial by a preponderance of the evidence after making a prima facie showing before trial." *Id.* at 827.

In the instant case, the affidavits of the parties contain contradictory statements as to whether (1) defendant initiated contact with plaintiff's operation manager to solicit an order for capsules, and (2) defendant actually manufactured the capsules. These facts are potentially material because the solicitation of business in Utah would furnish a connection with the state, and if McCausland actually manufactured the capsules, he cannot credibly claim that his involvement was limited to procuring orders for a company in Peru. Nonetheless, the trial court weighed the evidence without a hearing and apparently failed to resolve the inconsistencies between the parties' affidavits in favor of plaintiff. Moreover, the trial court's reference to lack of "substantial and continuous activity in the State of Utah" is inconsistent with the

distinction between specific and personal jurisdiction.

## II. SPECIFIC PERSONAL JURISDICTION

We clarified the distinction between specific and general personal jurisdiction in *Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*, 578 P.2d 850 (Utah 1978). There we explained that examination of a number of cases led us to conclude that an important difference exists between general personal jurisdiction, which is based on "doing business," and specific personal jurisdiction, which is based on the Utah long-arm statute's "transaction of *any* business." In *Abbott*, we noted that under the "long-arm or 'transaction of business' concept," personal jurisdiction may be asserted "[w]here the defendant has only minimum contacts with the forum" but "only on claims arising out of defendant's forum-state activity." *Id.* at 853 n. 6 (quoting Kristine Strachan, *In Personam Jurisdiction in Utah*, 1977 Utah L.Rev. 235, 253–54). In *International Shoe v. Washington*, the United States Supreme Court concluded that such contact satisfies requirements of the Due Process Clause of the Fourteenth Amendment and "notions of fair play and substantial justice." 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106 (Utah 1985), we again noted that the exercise of personal jurisdiction over a nonresident defendant turns upon the relationship between the defendant, the forum, and the litigation and that the "assessment of that relationship involves determining whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.'" *Id.* at 1110 (footnote omitted). We also emphasized the requirement for a close connection between the cause of action and the activity conducted within the state.

"Substantial and continuous contact"—which the trial court required for *specific* personal jurisdiction in this case—is precisely the definition of the *general* personal jurisdiction "doing business," which we propounded in *Roskelley & Co. v. Lerco, Inc.*, 610 P.2d 1307 (Utah 1980), stating:

> The older *"doing business"* concept requires a plaintiff to show that defendant has conducted *substantial and continuous activity* within the forum state. Once that is shown, defendant is subject to litigation related or unrelated to that business as he is a "pseudo resident [general personal jurisdiction]." But if the action is brought pursuant to the long-arm statute because defendant is not doing substantial business in the forum state, plaintiff must show that his claim arises out of some contact defendant has with the forum state, some action undertaken by defendant by which it can be shown that defendant has "purposefully availed himself of the privilege of conducting activities within the forum state [specific personal jurisdiction]."

*Id.* at 1311 (emphasis added).

■ Therefore, so long as the cause of action arises out of the contact itself, a prima facie showing of specific personal jurisdiction under the Utah long-arm statute only requires evidence of "minimal contacts" with the state through transaction of *any* business in the state, contracting to supply goods or services within the state, or causing injury within the state through tort or breach of warranty.

## III. PRIMA FACIE SHOWING OF JURISDICTION

We must determine whether Neways has made a prima facie showing of specific personal jurisdiction as described above, when the evidence is construed in its favor. The preamble to the Utah long-arm statute states:

> The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.

The United States District Court for the District of Utah was influenced by this legislative intent when it held in *Nova Mud Corp. v. Fletcher*, 648 F.Supp. 1123 (D.Utah 1986),

that telephone contact between the parties giving rise to breach of contract and common law fraud claims was sufficient to constitute a prima facie showing of jurisdiction over a Colorado resident under the Utah long-arm statute. *Id.* at 1126. In the instant case, McCausland asserts that the papaya capsules were not shipped by him to Neways in Utah but that they were shipped from Peru to California, where they were packaged by Neways' agent D & F and then sent on to Utah. However, in *Burt Drilling, Inc. v. Portadrill,* 608 P.2d 244 (Utah 1980), we addressed specific jurisdiction in the context of a defendant who contracted with a Utah resident and "purposefully undertook to supply goods to that resident reasonably knowing or anticipating that these goods would be used in this State." *Id.* at 247. We found that by so doing the defendant sought the protection of the laws of Utah and submitted itself to this jurisdiction.[2] *See Mallory Eng'g, Inc. v. Ted R. Brown & Assoc., Inc.,* 618 P.2d 1004 (Utah 1980) (similar holding).

McCausland relies on *Union Ski Co. v. Union Plastics Corp.,* 548 P.2d 1257 (Utah 1976), and *Cate Rental Co. v. Whalen & Co.,* 549 P.2d 707 (Utah 1976), two cases in which we found no jurisdiction on facts somewhat similar to those in the instant case. Because these cases involved a fully argued determination of jurisdiction based on the specific facts of each case rather than a pretrial prima facie showing of jurisdiction, they do not apply here. Moreover, in footnote 2 of this court's opinion in *Mallory Engineering,* we cited *Cate Rental* as applying a restrictive interpretation not followed in later decisions.

### CONCLUSION

We hold that the trial court erred in weighing the evidence without a hearing and in failing to resolve the conflicting affidavits in favor of plaintiff when ruling on a motion to dismiss for lack of jurisdiction. Review of the record persuades us that Ne-

ways has made a prima facie showing of specific personal jurisdiction. McCausland's alleged telephone contacts with Neways' agents in Utah for the purpose of soliciting orders for capsules, his knowledge that the use destination of the capsules was Utah, plus his acceptance of payments originating in Utah are sufficient to constitute the transaction of "any business within the state" or "contracting to supply services or goods in this state." Utah Code Ann. § 78–27–24. We are not called upon here to decide whether lesser activity than the above would suffice, and we therefore express no opinion on that matter.

A preliminary hearing on the issue of jurisdiction is appropriate if jurisdiction and the merits turn on different issues. *See Abbott,* 578 P.2d at 854. However, if the jurisdictional and substantive issues are closely intertwined, we will instruct the court to begin the trial with a fully argued determination of jurisdiction. *See Anderson,* 807 P.2d at 827.[3] Because the issue of jurisdiction and the issue of McCausland's liability to Neways, if any, are clearly intertwined, we adopt the procedure detailed in *Anderson.* Therefore, we remand this case for trial on the merits, with the instruction that the trial court allow McCausland to renew his motion to dismiss the action for lack of jurisdiction at the close of Neways' evidence. *Id.* at 829.

Reversed and remanded.

ZIMMERMAN, C.J., and STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.

---

**2.** Two justices dissented. Justice Stewart concurred in the result but thought that jurisdiction should be predicated on the sustaining of an "injury within this state." *Id.* at 247.

**3.** When jurisdiction turns on the same facts as the merits of the case, an evidentiary hearing is inappropriate because it infringes on the right

to jury trial and is an inefficient use of judicial resources (hearing the same evidence twice); in such cases—if plaintiff has made a prima facie showing—jurisdiction is determined by trial on the merits. *Anderson,* 807 P.2d at 827.