2004 UT App 412

**Brittney FENN, on behalf of herself and all others similarly situated, Plaintiff and Appellant,**

v.

**MLEADS ENTERPRISES, INC.; and John Does I through X whose true names are unknown, Defendants and Appellees.**

**No. 20030948–CA.**

Court of Appeals of Utah.

Nov. 12, 2004.

---

Daniel Garriott, Denver C. Snuffer Jr., Nelson Snuffer Dahle & Poulsen, Sandy, and Jesse L. Riddle, Riddle & Associates PC, Draper, for Appellant.

Jill L. Dunyon, Snow Christensen & Martineau, Salt Lake City, Derek A. Newman and Venkat Balasubramani, Newman & Newman, Seattle, Washington, for Appellees.

Before Judges BENCH, JACKSON, and ORME.

## OPINION

JACKSON, Judge:

¶ 1 The district court dismissed Plaintiff Brittney Fenn's claim for lack of personal jurisdiction; Fenn appeals. We vacate the dismissal and remand.

## BACKGROUND

¶ 2 MLeads Enterprises, Inc. (MLeads), an Arizona corporation, contracted with a marketing agent to advertise MLeads's services to consumers. In August 2002, Fenn, a Utah resident, received one unsolicited email that advertised MLeads's services. MLeads did not know specifically that the agent would send an email to Fenn or to any Utah resident. The email did not include "ADV:" in the subject line. Fenn brought suit against MLeads pursuant to the Unsolicited Commercial and Sexually Explicit Email Act (the Email Statute). *See* Utah Code Ann. §§ 13–36–101 to –105 (Supp.2003) (repealed 2004).

Fenn did not allege that she suffered any economic, physical, emotional, or dignitary damages.

¶ 3 We must decide whether the state can exercise personal jurisdiction over a defendant who caused one unsolicited commercial email to be sent to a resident of the state.[1] This issue is a matter of first impression in Utah and, as far as our research has revealed, in all of the United States. Accordingly, to aid understanding of the issue, we will describe the context in which this issue arose.

¶ 4 In 1994, companies began to market via unsolicited email. *See* Elizabeth A. Alongi, Note, *Has the U.S. Canned Spam?*, 46 Ariz. L.Rev. 263, 263 (2004). Since then, the rate at which companies use unsolicited email to advertise has grown exponentially. *See id.* By 2003, fifty-six percent "of all email traffic" was unsolicited commercial email. *Id.* It can be quite costly to Internet service providers and corporations to receive massive volumes of unsolicited email. *See id.* at 264.

¶ 5 In response to the growing problem, in 1999, Tennessee became the first state to require the characters "ADV:" in the subject lines of unsolicited commercial email. *See* Tenn.Code Ann. § 47–18–2501 (Supp.1999). Three years later, Utah codified the Email Statute. *See* Utah Code Ann. §§ 13–36–101 to –105 (repealed 2004). The Email Statute required that unsolicited commercial email include "ADV:" as the first four characters in the subject line. *See id.* § 13–36–103(1)(b)(i) (repealed 2004). The Email Statute allows for civil enforcement by permitting recipients to recover reasonable attorney fees and costs in addition to the lesser of $10 per email or

$25,000 per day. *See id.* § 13–36–105(2) (repealed 2004).

¶ 6 By 2002, when the legislature passed the Email Statute, Utah became one of four states to have such legislation. *See id.;* Colo.Rev.Stat. § 6–2.5–103 (2000); Kan. Stat. Ann. § 50–6,107 (Supp.2003); Tenn.Code Ann. § 47–18–2501 (Supp.2003). Thus, Utah's requirement was unusual but not unique, and such requirements had existed for three years by the time that Fenn received the email in this case.

¶ 7 Despite the four states' laws, the problem of unsolicited email continued. In 2003 and 2004, twelve other states adopted legislation requiring "ADV:" in the subject line of unsolicited commercial email.[2] Finally, in 2003, Congress passed legislation regulating unsolicited commercial email. *See* 15 U.S.C. §§ 7701–7713 (Supp.2004). The federal law aims primarily at fraudulent or misleading email, rather than nonfraudulent, unsolicited email, as is at issue here. *See id.* The federal law does not require the "ADV:" text and preempts state statutes, such as the Email Statute. *See id.*

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 This case requires us to determine whether a Utah court has authority to exercise personal jurisdiction over a defendant whose only contact with the state was to employ an agent who sent one unsolicited commercial email to a resident of Utah. Because this pretrial jurisdictional decision was made on documentary evidence only, it presents only legal questions that are reviewed for correctness. *See Starways, Inc. v. Curry*, 1999 UT 50, ¶ 2, 980 P.2d 204.

1. Because the trial court disposed of this case at an early stage, some important facts remain unresolved. Specifically, the parties dispute whether Fenn had consented to receive the email in a previous visit to the website of a related entity and whether MLeads or its marketing agent had any means to discover the physical location or residency of the recipients of its email. The record also contains no information as to the nature of the agreement between MLeads and its marketing agent.

We similarly have no information on whether an automated system or an employee generated the email. Simple software tools automate the process by which email are created and transmit-

ted, enabling companies to eliminate employee involvement after the initial programming.

2. *See, e.g.,* Ariz.Rev.Stat. § 44–1372.01 (Supp. 2004); 815 Ill. Comp. Stat. 511/10 (Supp.2003); La.Rev.Stat. Ann. § 51:1741.1 (Supp.2003); Me. Rev.Stat. Ann. tit. 10, § 1497 (Supp.2003); Mich. Comp. Laws §§ 445.2503–.2508 (Supp.2003); Minn.Stat. § 325F.694 (repealed 2003); Mo.Rev. Stat. § 407.1138 (Supp.2003); N.M. Stat. Ann. §§ 57–12–23 to –24 (Supp.2003); N.D. Cent. Code § 51–27–04 (Supp.2003); 15 Okl. St. Ann. § 776.6 (Supp.2004); S.D. Codified Laws § 37–24–6(13) (Supp.2003); Tex. Bus. & Comm.Code Ann. § 46.003 (Supp.2003).

¶9 The Email Statute has been superceded by federal law, *see* 15 U.S.C. §§ 7701–7713 (Supp.2004), and repealed by the Utah legislature, *see* Utah Repeal of Unsolicited Commercial or Sexually Explicit Email Act, ch. 278, § 1, 2004 Utah Laws 278. However, during the time in which the statute was in effect, the lower court announced its decision. We review the trial court's decision in light of the statutory scheme in effect at the time, i.e., while the Email Statute was in effect. *See State v. Webster,* 2001 UT App 238, ¶¶ 1, 41, 32 P.3d 976; *Barber v. Farmers Ins. Exch.,* 751 P.2d 248, 249 (Utah Ct.App.1988).

## ANALYSIS

■ ¶10 To exercise jurisdiction, (i) a Utah statute must permit the court to exercise jurisdiction, and (ii) the exercise of jurisdiction must " 'comport[ ] with due process requirements of the Fourteenth Amendment.' " *Lee v. Frank's Garage & Used Cars, Inc.,* 2004 UT App 260, ¶7, 97 P.3d 717 (quoting *In re W.A.,* 2002 UT 127, ¶14, 63 P.3d 607, *cert. denied,* 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065 (2003)).

### I. Statutory Requirement

■ ¶11 Fenn argues that the Email Statute itself impliedly confers jurisdiction because it creates a cause of action. However, even assuming that Fenn preserved and adequately briefed this point, the Utah Supreme Court recently foreclosed this argument: "Liability and jurisdiction are independent.... [The statute] speaks to liability only and does not purport to grant personal jurisdiction. Nothing in the statutory language indicates that the legislature intended to do so." *MFS Series Trust III v. Grainger,* 2004 UT 61, ¶21, 96 P.3d 927 (quotations and citation omitted). Thus, to convey jurisdiction, a statute must do more than merely create a cause of action.

■ ¶12 Fenn alternatively argues that the state's long-arm statute, Utah Code section 78–27–24 (1998), confers personal jurisdiction

over MLeads. The long-arm statute provides:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state; ...
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty[.]

Utah Code Ann. § 78–27–24(1),(3) (1998). Subsection (1) applies to this situation because advertising in the state qualifies as the "transaction of any business within this state." [3] *Id.* § 78–27–24(1). In any event, "[t]he Utah long-arm statute 'must be extended to the fullest extent allowed by due process of law.' " *Starways,* 1999 UT 50 at ¶7, 980 P.2d 204 (quoting *Synergetics v. Marathon Ranching Co. Ltd.,* 701 P.2d 1106, 1110 (Utah 1985)); *see also* Utah Code Ann. § 78–27–22 (1969). Hence, whether the long-arm statute provides jurisdiction in this case depends only upon whether due process permits the exercise.

### II. Due Process

■■ ¶13 A court can exercise two forms of personal jurisdiction: (i) general and (ii) specific. *See Phone Directories Co., Inc. v. Henderson,* 2000 UT 64, ¶11, 8 P.3d 256. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Neways, Inc. v. McCausland,* 950 P.2d 420, 422 (Utah 1997). Fenn does not allege that Utah could exercise general personal jurisdiction over MLeads. Thus, we consider only whether Fenn established that the court could exercise specific personal jurisdiction.

■ ¶14 A democratic government must exercise its powers against only those who have in some way assented to the governmental power, such as by pursuing the benefits available in the forum. Accordingly, due process requires that the defendant have "minimum contacts" with the forum jurisdic-

---

**3.** Whether subsection (3) applies depends on whether a statutory violation constitutes an "in-

jury." We decline to address that issue here.

tion "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *MFS Series Trust,* 2004 UT 61 at ¶¶ 9,10, 96 P.3d 927 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

¶ 15 Courts previously have articulated the framework of personal jurisdiction analysis in several ways. *Compare Starways, Inc. v. Curry,* 1999 UT 50, ¶¶ 8, 11, 980 P.2d 204, *with Parry v. Ernst Home Ctr. Corp.,* 779 P.2d 659, 661–62 (Utah 1989). Most recently, Utah has applied a four-part analysis to the due process inquiry. *See, e.g., MFS Series Trust,* 2004 UT 61 at ¶ 10, 96 P.3d 927. Despite the differences in the organization and structure, this four-part analysis makes fundamentally the same queries as the other analyses.

¶ 16 First, the court considers if the defendant " 'purposefully availed itself of the privilege of conducting activities within the forum state.' " *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)) (other citation and alteration omitted). Second, the court considers whether the claim arose out of the defendant's Utah activity. *See id.* (citing *Neways, Inc. v. McCausland,* 950 P.2d 420, 423 (Utah 1997)). Third, the court considers if the defendant "should [have been able to] reasonably anticipate being haled into court" in Utah. *Id.* (citing *Synergetics,* 701 P.2d at 1110) (other citation omitted). Finally, the court considers the state's interest and "fairness" to the parties. *Id.*

### A. Purposeful Availment

¶ 17 Under the first prong, a state may exercise jurisdiction only against a defendant who has "purposefully directed his activities at residents of the forum."[4] *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations and citation omitted). For example, the United States Supreme Court deemed a defendant's activities "purposefully directed" when a corporation placed products

in " 'the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure[d] consumers." *Id.* at 473, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Likewise, the Court deemed a magazine publisher's activities "purposefully directed" when the publisher distributed a defamatory story in the forum. *See (Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *see also Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

¶ 18 In a similar vein, in a case in which the defendants allegedly made defamatory statements to individuals in Utah and caused libelous facsimiles to be sent to Utah, the Utah Supreme Court held that a court properly exercised jurisdiction. *See Starways,* 1999 UT 50 at ¶¶ 5, 12, 980 P.2d 204. Moreover, email contacts alone can establish jurisdiction when the contacts are extremely numerous. *See Verizon Online Servs., Inc. v. Ralsky,* 203 F.Supp.2d 601 (E.D.Va.2002); *Internet Doorway, Inc. v. Parks,* 138 F.Supp.2d 773 (S.D.Miss.2001) (involving millions of email); *Washington v. Heckel,* 122 Wash.App. 60, 93 P.3d 189, 193 (2004) (involving millions of email but not directly addressing personal jurisdiction).

¶ 19 The Utah Supreme Court noted in dicta in *Starways* that Utah could not properly exercise jurisdiction against a defendant who "did not cause" communications "to be transmitted into Utah but did send them elsewhere ... [even if the defendant could have] reasonably forsee[n] that a copy would end up in Utah." *Starways,* 1999 UT 50 at ¶ 12 n. 3, 980 P.2d 204. "Such an attenuated nexus would not be sufficient, standing alone, to justify the imposition of personal jurisdiction...." *Id.* Thus, foreseeable but undirected contacts cannot justify a court's exercise of jurisdiction.

---

4. We recognize that a status exception exists to this rule, but it is inapplicable in this case. *See In re W.A.,* 2002 UT 127, 63 P.3d 607, *cert.*

*denied,* 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065 (2003).

¶ 20 This case incorporates aspects of both the circumstances hypothesized in *Starways* and the intentional availment of forum markets in *World–Wide Volkswagen* but is not squarely on point with either case. In this case, unlike *World–Wide Volkswagen,* MLeads did not place a "product" into the stream of commerce. Moreover, Fenn does not allege that the email caused any reputational, economic, emotional, or physical "injury." On the other hand, unlike the hypothetical situation posited in *Starways,* MLeads did cause the communications to come into Utah.

¶ 21 The extent to which the defendant caused the result is the more important aspect of the analysis. MLeads caused its agent to send email, and the agent sent an email to Fenn, who is a resident of Utah. The record does not disclose whether the agent sent a large volume of email all over the country or whether it sent one email to Fenn specifically. In either case, MLeads directed its agent to solicit business, and that direction instantiates the purpose that makes the connection more than an "attenuated nexus."

### B. Reasonably Anticipate Being Haled Into Court [5]

¶ 22 Under the next prong of our analysis, for a court to exercise jurisdiction, "[d]efendants' 'conduct and connection with the forum State must be such that they should [have been able to] reasonably anticipate being haled into court there.' " *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah 1985) (quoting *World–Wide Volkswagen,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)) (alterations omitted). This inquiry closely parallels the purposeful availment test: courts have exercised jurisdiction against a defendant whose activity was directed toward the forum state. For example, the Court of Appeals for the Tenth Circuit has held that a court may exercise jurisdiction in a defamation case in which the defendant mailed a single letter into the forum. *See Burt v. Board of Regents,* 757 F.2d 242, 244–45 (10th Cir.1985).

¶ 23 Similarly, the Arkansas Supreme Court upheld the exercise of jurisdiction against a defendant who sent email to a recipient in Arkansas. *See Kirwan v. Arkansas,* 351 Ark. 603, 96 S.W.3d 724, 731 (2003) (discussing territorial jurisdiction over a criminal defendant). The statute at issue in *Kirwan* made it illegal to "distribute," "ship," or "exchange" certain materials. *Id.* The court reasoned that the objectionable conduct was delivery of the email and thus that the conduct occurred in Arkansas, even if the email were sent from another state. *See id.* In the case at hand, the Email Statute made it illegal to "send [ ]" noncompliant email "to an email address held by a resident of [Utah]." Utah Code Ann. § 13–36–103(1). In this context, "send" and "ship" are synonyms, and thus the conduct at issue here occurred in Utah, even if the "send[ing]" was done from another state.[6]

¶ 24 In contrast, courts have held jurisdiction to be improper where a defendant maintains only passive contact with the forum, as through posting a static internet website. *See Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1298–99 (10th Cir. 1999); *Patriot Sys., Inc. v. C–Cubed Corp.,* 21 F.Supp.2d 1318, 1323–24 (D.Utah 1998). Sending an email to a forum requires more purpose than maintaining a passive internet website, however. Thus, MLeads should have anticipated being haled into court wherever its email were received, even in Utah.

### C. State's Interest and Fairness

¶ 25 To assess the final prong of our analysis and determine whether jurisdiction would offend "traditional notions of fair play and substantial justice,"

generally, a court weighs: (1) the burden on the defendants; (2) the forum state's

---

5. We dispense with the second query of the minimum contacts test because Fenn's claim clearly arose out of activity in Utah.

6. Without commenting on the adequacy of such a claim in Utah, we also recognize that a federal district court in Virginia exercised jurisdiction on the basis that the out-of-state defendants accessed the Internet through an Internet service provider headquartered in Virginia. *See Bochan v. La Fontaine,* 68 F.Supp.2d 692, 695–96, 699 (E.D.Va.1999).

interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interest of the interstate system in the most efficient resolution of disputes; and (5) the collective interests of states in furthering important substantive social policies.

*Internet Doorway, Inc. v. Parks,* 138 F.Supp.2d 773, 779 (S.D.Miss.2001) (citation omitted). First, traveling to Utah and hiring Utah counsel to defend itself in this case undoubtedly burdens MLeads, a small, Arizona-based company.

¶ 26 Second, by virtue of the fact that its legislature enacted this statute, Utah demonstrates an interest in preventing its residents from receiving noncompliant email. Yet, this interest can be recognized honestly only as relatively minor. Fenn did not allege any injury. Fenn alleged that she received one statute-violative email from MLeads. Utah has since repealed this statute, and Congress did not include the text requirement in the federal legislation. *See* 15 U.S.C. §§ 7701–7713. Further, when courts have found that personal jurisdiction did exist to enforce similar legislation against nonresident defendants, the cases involved allegations of fraud and millions of email, which are not alleged here.[7] *See Verizon Online Servs., Inc. v. Ralsky,* 203 F.Supp.2d 601, 601 (E.D.Va. 2002); *Internet Doorway,* 138 F.Supp.2d at 774; *Washington v. Heckel,* 122 Wash.App. 60, 93 P.3d 189, 191–92, 193 (2004). Nonetheless, Utah has an interest in the enforcement of its statutes for the benefit of its residents.

¶ 27 Third, Fenn has an economic interest in this lawsuit. The statute provided that the recipient of an unsolicited email could recover actual damages, or $10 per unsolicited email to a maximum of $25,000 for each day that the violation occurred, as well as costs and attorney fees. *See* Utah Code Ann. § 13–36–105. Because Fenn pleaded no damages and received only one unsolicited email from MLeads, she could recover $10.[8]

¶ 28 Moreover, while the test here does not explicitly consider the possible benefits to the plaintiff's attorney, the Email Statute's award of attorney fees reflects the Utah Legislature's interest in encouraging private parties, such as Fenn, to enforce this statute. Because Utah benefits from its attorneys earning fees and Fenn benefits from having attorneys who will represent her rights, such benefits should be considered.

¶ 29 Fourth, in considering "the interest of the interstate system in the most efficient resolution of disputes," *Internet Doorway,* 138 F.Supp.2d at 779, we recognize that if we affirm the dismissal of this case, Fenn likely will have no recourse.[9] Such a dismissal may be an efficient resolution, but a dismissal would abandon the fifth factor, the "important substantive social policies" at issue in this case. *Id.* Accordingly, we hold that the interests of Utah and Fenn in prosecuting this case outweigh the burden placed on MLeads. Thus, the exercise of personal jurisdiction in this case is fair and comports with traditional notions of fair play and substantial justice.

---

7. Also, two of these cases were brought by Internet service providers, who suffer significantly more injury than an individual email recipient. *See Verizon Online Servs., Inc. v. Ralsky,* 203 F.Supp.2d 601, 604 (E.D.Va.2002); *Internet Doorway, Inc. v. Parks,* 138 F.Supp.2d 773, 774 (S.D.Miss.2001).

8. This assumes that because Fenn is not a lawyer she is ineligible to share the proceeds of the attorney fees award pursuant to rule 5.4 of the Utah Rules of Professional Conduct. *See* Utah R. Prof'l Conduct 5.4(a).

9. Fenn probably would not have a claim under federal law, common law, or the laws of the states that arguably have more connection to the activities at issue here. The federal CAN–SPAM law was not in effect at the time and probably would not be implicated in this situation. *See* 15 U.S.C. §§ 7701–7713 (Supp.2004). Further, Fenn may have brought a common law trespass to chattel claim, but a successful claim would require Fenn to prove actual damages. *See Intel v. Hamidi,* 30 Cal.4th 1342, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003); *Ferguson v. Friendfinders, Inc.,* 94 Cal.App.4th 1255, 115 Cal.Rptr.2d 258, 261 (2002). Arizona, where MLeads is based, did not have a similar statute in effect at the time of this email, and its current statute provides for enforcement through the attorney general only. *See* Ariz.Rev.Stat. § 44–1372.01 (Supp.2004) (effective Sept. 18, 2003). Florida, where MLeads's marketing agent is based, has no similar provision.

## CONCLUSION

¶ 30 Sending one email to a resident of Utah is sufficient "contact" to satisfy the long-arm statute and the minimum contacts requirement of due process for a statutory claim arising from the sending of that email. Additionally, the state's and Fenn's interests in this case trump the burdens imposed upon MLeads. Thus, we hold that the district court ruled incorrectly in dismissing this case on summary judgment for lack of personal jurisdiction. We vacate the dismissal and remand for such proceedings as may now be appropriate.

¶ 31 I CONCUR: GREGORY K. ORME, Judge.

¶ 32 I DISSENT: RUSSELL W. BENCH, Associate Presiding Judge.