2006 UT 8

**Brittney FENN, on behalf of herself and all others similarly situated, Plaintiff and Respondent,**

v.

**MLEADS ENTERPRISES, INC.; and John Does one through ten whose true names are unknown, Defendants and Petitioner.**

No. 20041072.

Supreme Court of Utah.

Feb. 10, 2006.

Denver C. Snuffer, Jr., Sandy, Jesse L. Riddle, Draper, for plaintiff.

Jill L. Dunyon, Salt Lake City, Derek A. Newman, Roger M. Townsend, Venkat Balasubramani, Seattle, WA, for defendants.

WILKINS, Associate Chief Justice:

¶ 1 In this case, we are asked to consider whether due process permits a Utah court to exert personal jurisdiction over a defendant who sends an email without knowledge of the residence of the recipient or the location at which the recipient will retrieve the message. The court of appeals concluded that Utah may exert jurisdiction under the given circumstances in this case. We disagree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

¶2 When determining whether the trial court correctly granted a motion to dismiss, we " 'accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.' "[1] Mleads is an eight-employee closely-held corporation located in Arizona. It contracts with third-party marketing companies who advertise Mleads's services to customers through email solicitations. Recipients of those emails may complete an application requesting more information from Mleads regarding particular loans. Mleads subsequently provides the applicant with an appropriate institution for further financial assistance with home loans and mortgages. Mleads maintains an office solely in Arizona and conducts most of its business in Arizona, although business activity within Utah produces approximately 1% of its revenue. Mleads is not licensed to conduct business in Utah nor does it employ any Utah-based employees or agents. Mleads does not recruit employees or agents in Utah and does not advertise in any Utah newspapers, magazines, or other forms of Utah-based media. Its advertisement to Utahns has been strictly through unsolicited email over the Internet. Mleads has no bank accounts in Utah and is not subject to taxation in Utah.

¶3 Brittney Fenn, a Utah resident, received an unsolicited email advertisement from Mleads that she opened while living in Utah. On January 3, 2004, Fenn filed a two-page complaint, alleging that Mleads had violated the Unsolicited Commercial and Sexually Explicit Email Act (the Act), which re-quired the characters "ADV" in the subject line of unsolicited commercial email.[2] The Utah Act permitted recipients of non-complying emails to recover the lesser of $10 per email or $25,000 per day and reasonable attorney fees and costs.[3] Fenn's complaint presented only facts regarding this particular email sent to Fenn and failed to discuss the details of Mleads's general business contacts with Utah.

¶4 One month after Fenn filed her complaint, the Utah Legislature passed a bill to repeal the Act because the federal government had passed "Controlling the Assault of Non-solicited Pornography and Marketing" (CAN–SPAM), which preempted the Utah Act.[4]

### B. PROCEDURAL BACKGROUND

¶5 The district court dismissed the case for lack of specific personal jurisdiction, finding "that there [were] insufficient minimum contacts between Defendant and this forum to warrant exercise of personal jurisdiction over Defendant." The district court further explained that the "complaint's sole allegation with respect to jurisdiction is that 'Defendant sent, or caused to be sent, to plaintiff an unsolicited commercial e-mail,' which, according to Plaintiff establishes this Court's jurisdiction under Utah Code Ann. § 13–36–101 (Supp.2002)." The court observed that although Fenn argued for personal jurisdiction over Mleads, Fenn failed to claim and provide evidence that the court could exercise general personal jurisdiction over Mleads. Rather, Fenn alleged that "the Act itself, as well as Utah's long-arm statute, provide a basis for *specific* personal jurisdiction over Defendant."

¶6 The court of appeals also correctly understood Fenn's arguments to be based on

---

1. *MFS Series Trust III v. Grainger*, 2004 UT 61, ¶6, 96 P.3d 927 (quoting *Krouse v. Bower*, 2001 UT 28, ¶2, 20 P.3d 895).

2. Utah Code Ann. § 13–36–103 (2002) (repealed 2004).

3. *Id.* § 13–36–105(2) (2002) (repealed 2004).

4. 15 U.S.C. § 7701 (2005). CAN–SPAM addresses the problems associated with the rapid growth and abuse of unsolicited commercial email and accordingly recognizes the substantial government interest in regulating commercial email on a nationwide basis. CAN–SPAM prohibits commercial email from misleading recipients as to the source or content and protects recipients' rights to decline reception of commercial emails. Ultimately, CAN–SPAM permits states to press criminal charges and recipients to file civil suits when the sender violates the CAN–SPAM provisions. *See* 15 U.S.C. §§ 7701, 7706.

specific jurisdiction, noting that "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant. Fenn does not allege that Utah could exercise general personal jurisdiction over Mleads. Thus, we consider only whether Fenn established that the court could exercise specific personal jurisdiction."[5] Applying the specific jurisdiction analysis, the court of appeals held that sending one email to a resident of Utah satisfies both the Utah long-arm statute and the minimum contacts required by due process. Accordingly, the court of appeals vacated the dismissal and remanded to the district court.

## ANALYSIS

■ ¶7 The question before this court is whether the court of appeals erred in reversing the district court's dismissal for lack of personal jurisdiction. An appeal from a pretrial jurisdictional decision made only on documentary evidence presents legal questions which we review for correctness.[6]

■ ¶8 Once a defendant raises lack of personal jurisdiction as a defense, the plaintiff must establish personal jurisdiction with adequate evidence.[7] To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction.[8] Here, where Plaintiff Fenn relies on specific jurisdiction, personal jurisdiction is only proper if we determine that (1) the Utah long-arm statute extends to defendant's acts or contacts, (2) plaintiff's claim arises out of those acts or contacts, and (3) the exercise of jurisdiction satisfies the defendant's right to due process under the United States Constitution.[9]

¶9 Both parties agree that the Utah long-arm statute [10] extends to Mleads's actions in this case and that the Plaintiff's claim arises out of those acts or contacts. Hence, we granted certiorari only to review the due process analysis of the court of appeals in regards to the email sent to Fenn. Mleads contends that due process prohibits the exercise of personal jurisdiction for two reasons: (1) Mleads lacks minimum contacts with Utah and (2) an exercise of jurisdiction based on one email would be unfair and unreasonable. We agree and reverse.

---

5. *Fenn v. Mleads*, 2004 UT App 412, ¶13, 103 P.3d 156.

6. *See MFS Series Trust III v. Grainger*, 2004 UT 61, ¶7, 96 P.3d 927.

7. *See Provident Nat'l Bank v. Cal. Fed. Savs. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987); *Neways, Inc. v. McCausland*, 950 P.2d 420, 423 (Utah 1997); *see also NW. Healthcare Alliance, Inc. v. Healthgrades.com, Inc.*, 50 Fed.Appx. 339, 2002 WL 31246123 (9th Cir. October 7, 2002); *Padcom Inc. v. Netmotion Wireless, Inc.*, 2004 WL 1192641, 2004 U.S. Dist. LEXIS 9658 (D.Del. May 24, 2004).

8. *See Provident National Bank*, 819 F.2d at 437; *Neways*, 950 P.2d at 423. We recognize that the legal analysis for personal jurisdiction cases differs depending on whether the plaintiff asserts specific or general jurisdiction. Courts exercise specific jurisdiction "only with respect to the claims arising out of the particular activities ... in the forum state." *Phone Directories Co. v. Henderson*, 2000 UT 64, ¶11, 8 P.3d 256. General personal jurisdiction, on the other hand, permits a court to assert "power over a defendant without regard to the subject of the claim asserted." *Id.* Such jurisdiction only exists when the defendant conducts "substantial and continuous local activity in the forum state." *Id.* Of course, our conclusion in this case does not impact the possibility of a Utah court properly asserting personal jurisdiction over a foreign resident based on a single email when that foreign resident otherwise has "continuous and systematic" contacts with Utah sufficient to establish general jurisdiction. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, since neither Fenn nor Mleads presented a general jurisdiction argument, based on the 1% revenue Mleads earns in Utah, to either the district court or the court of appeals, our analysis focuses only on whether Utah may exert specific personal jurisdiction over Mleads.

9. *See Phone Directories*, 2000 UT 64, ¶12, 8 P.3d 256.

10. Although the court of appeals addressed Utah's long-arm statute, we deem that analysis unnecessary in this opinion for two reasons: (1) Plaintiff Mleads did not raise the long-arm statute on appeal and (2) the validity of this particular exercise of jurisdiction under Utah's long-arm statute hinges on whether due process permits the exercise of jurisdiction: "The provision of the act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over non-resident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78–27–22

## I. THE ASSERTION OF JURISDICTION VIOLATES THE DUE PROCESS REQUIRED BY THE CONSTITUTION

■ ¶ 10 The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law."[11]  In determining whether a state's exercise of jurisdiction over a non-resident defendant comports with due process, so as not to deprive the party of life, liberty, or property, the United States Supreme Court has determined that

> due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does *not offend the "traditional notions of fair play and substantial justice."*[12]

Thus, a Utah state court may assert specific personal jurisdiction over a foreign defendant only if (1) the defendant has minimum contacts with Utah and (2) the assertion of jurisdiction would not offend the traditional notions of fair play and substantial justice.[13]

### A. *Mleads Lacks Sufficient Minimum Contacts Arising Out of This Claim*

¶ 11 We first review whether Mleads's act of sending this one email to Fenn established minimum contacts between Mleads and Utah. Mleads argues that it did not, and we agree. The activity that gave rise to this claim, namely the sending of an unsolicited email advertisement, created an insubstantial contact with Utah under the federal due process analysis.

■ ¶ 12 A Utah court may not exert jurisdiction unless the defendant's contacts create a " 'substantial connection' with the forum state."[14]  The fact that the contact with Utah occurred via the Internet does not change the analysis. "Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residences, the exercise of specific jurisdiction is proper,"[15] and "[d]ifferent results should not be reached simply because business is conducted over the Internet."[16]  Nevertheless, "[t]he 'minimum contacts' standard is not susceptible of mechanical application, and instead, involves an ad hoc analysis of the facts,"[17] particularly when dealing with the Internet because emails and websites present unique and complicated problems for jurisdictional analysis.  The main complication is that a defendant, like Mleads, is generally unaware of the geographic location to which it sends an email because that information is not necessarily provided with the email address.  With this in mind, courts have applied a variety of tests in Internet jurisdiction cases.  Thus, a defendant may

(2005).  Thus, our analysis focuses on the due process clause.

11.  U.S. Const. amend. XIV, § 1.

12.  *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154; *see also MFS Series Trust III v. Grainger,* 2004 UT 61, ¶ 10, 96 P.3d 927; *Starways, Inc. v. Curry,* 1999 UT 50, ¶ 8, 980 P.2d 204 (concluding that sufficient evidence of minimum contacts and reasonableness permitted exertion of specific personal jurisdiction over California residents who conducted marketing services for a Nevada corporation with its principle place of business in Utah); *Neways,* 950 P.2d at 423 (considering minimum contacts, purposeful availment and reasonableness to uphold specific personal jurisdiction over non-resident defendant).

13.  *See MFS Series Trust,* 2004 UT 61, ¶ 10, 96 P.3d 927; *see also Phone Directories,* 2000 UT 64, ¶ 12, 8 P.3d 256.

14.  *MFS Series Trust,* 2004 UT 61, ¶ 10, 96 P.3d 927 (quoting *Asahi Metal Indus. Co. v.Super. Ct. of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

15.  *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (referring to *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).  *Zippo* remains one of the most influential cases involving personal jurisdiction and the Internet.

16.  *Zippo,* 952 F.Supp. at 1124; *see also Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 509–13 (D.C.Cir.2002);  16 James Wm. Moore et al., *Moore's Federal Practice* § 108.44 (3d ed.2005).

17.  *Rocky Mountain Claim Staking v. Frandsen,* 884 P.2d 1299, 1301 (Utah Ct.App.1994);  *see also LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1301 (6th Cir.1989) (quoting *Stuart v. Spademan,* 772 F.2d 1185, 1194 (5th Cir.1985)).

establish a substantial connection with Utah in a number of ways.

¶ 13 First, a defendant may purposefully avail itself of the benefits of conducting business in Utah.[18] Generally, a party purposefully avails itself of the benefits of conducting business in a state by deliberately engaging in significant activities within the state [19] or by creating " 'continuing obligations' between himself and residents of the forum." [20] Courts often determine purposeful availment by considering whether the defendant "deliberately" created "some relationship with the forum state that would serve to make that state's potential exercise of jurisdiction foreseeable." [21] Nevertheless, the question of purposeful availment is irrelevant when the nature and quality of the contact creates an insubstantial connection with the forum.[22] Furthermore, even if a defendant has purposefully availed itself of the benefits of conducting business in a forum so that the exercise of jurisdiction is foreseeable, a court may still be restrained from the assertion if doing so violates the traditional notions of fair play and substantial justice.[23]

¶ 14 Second, some courts have also upheld jurisdiction in Internet cases under the *Calder v. Jones* "effects test." [24] In applying the *Calder* test, the court examines the degree to which defendants knew or should have known that their actions may affect a given plaintiff in the forum.[25] The defendants in *Calder* were not intending to avail themselves specifically of the benefits of conducting business in California. But the court concluded that because they had knowledge that their defamatory acts could injure a particular California-based company, California courts could properly exercise jurisdiction. Likewise, in applying the "effects test" to Internet activity, the Ninth Circuit, in *Panavision International v. Toeppen*, concluded that California may exercise personal jurisdiction over an Illinois defendant who registered other companies' trademarks as Internet domain names with the intention of later selling those domain names to the trademark owners.[26] Because Panavision was headquartered in California, the court determined that the defendant must have known his actions would have the effect of injuring the plaintiff in California.[27]

¶ 15 Third and more generally, one could establish sufficient minimum contacts, even without purposeful availment or knowledge of a potential effect, when the nature and quality of the activity is generally of such a degree to support the exercise of jurisdiction.[28] Such an analysis is particularly relevant in Internet cases because "[c]ourts determining personal jurisdiction primarily on the basis of Internet activity

18. *See Rocky Mountain,* 884 P.2d at 1301.

19. *See Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174.

20. *Id.* at 476, 105 S.Ct. 2174 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).

21. *First Mortgage Corp. v. State St. Bank & Trust Co.,* 173 F.Supp.2d 1167, 1173–74 (D.Utah 2001) (citing *Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174); *see also Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,* 205 F.3d 1244, 1247–48 (10th Cir.2000) (concluding that defendant had purposefully directed its contact after it received notice that it was routing customer's emails, albeit inadvertently, through plaintiff's email server).

22. *See First Mortgage,* 173 F.Supp.2d at 1174 (referring to *Asahi Metal Indus. Co. v.Super. Ct. of Cal.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

23. *MFS Series Trust,* 2004 UT 61, ¶ 10, 96 P.3d 927.

24. 465 U.S. 783, 785–87, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

25. *Id.* at 786–90, 104 S.Ct. 1482.

26. 141 F.3d 1316, 1322 (9th Cir.1998).

27. *Id.*

28. *See In re W.A.,* 2002 UT 127, 63 P.3d 607 (holding that parental status provides the state a strong enough interest in the matter to make minimum contacts irrelevant); *see, e.g., Verizon Online Servs., Inc. v. Ralsky,* 203 F.Supp.2d 601, 616 (E.D.Va.2002) (asserting jurisdiction based on the nature and quality of the conduct); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997) (disregarding purposeful availment and looking rather to the level of activity involved with the contact).

generally focus on the nature and quality of activity that a defendant conducts over the Internet." [29] We have similarly stated that "[d]ue process is only satisfied based on the 'quality and nature of the activity' for each individual defendant." [30]

¶ 16 One approach to the nature and quality inquiry has been to apply a "sliding scale" in extending the jurisdictional analysis to Internet situations.[31] The sliding scale approach, introduced in *Zippo Manufacturing Company v. Zippo Dot Com, Inc.,*[32] advocates exercising jurisdiction over corporations that clearly do business over the Internet.[33] To make this determination in the context of websites, *Zippo* and its progeny look to whether the defendant corporation actually engages in "knowing and repeated transmission of computer files over the Internet." [34] If so, the Internet activity is "active" under the due process analysis and satisfies minimum contacts.[35] For instance, repeatedly sending contracts via email satisfies the minimum contacts required by due process because the defendant corporation is clearly doing business in the forum-state.[36] However, at the opposite end of the sliding scale are websites where a defendant has merely posted information accessible to users in foreign jurisdictions. Courts term these websites as "passive" and generally determine jurisdiction to be improper. "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." [37] Thus, when the level of activity falls in the middle ground and is "interactive," we focus specifically on the nature and quality of the activity, meaning the type of activity and the level of exchange that occurs over the Internet. And implicit in this analysis is the sender's purpose in sending the email and its effect on the recipient.

¶ 17 Furthermore, we recognize that certain types of emails, merely through their nature and quality, may rise to a level that creates a substantial connection between the defendant and Utah. It is conceivable, for example, that sending mass emails into Utah, or even a threatening or otherwise tortious individual email, may result in a substantial connection between the defendant and Utah if the nature and quality is such as to have a meaningful impact on Utah and its citizens.

¶ 18 In applying the nature and quality test for determining minimum contacts, some courts have asserted specific personal jurisdiction over defendants based solely on nationwide Internet advertisements.[38] These courts have relied on the law regarding personal jurisdiction over corporations that advertise in magazines. For example, in *Haelan Products, Inc. v. Beso Biological,* the United States District Court for the Eastern District of Louisiana held that the forum court could properly exercise jurisdiction over a corporation for trademark infringement on the Internet.[39] The court relied on a four-factor test which the Fifth Circuit had

---

**29.** *Verizon Online,* 203 F.Supp.2d at 616.

**30.** *MFS Series Trust III v. Grainger,* 2004 UT 61, ¶ 11, 96 P.3d 927; *see also Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Int'l Shoe, Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("[A]lthough the commission of some single or occasional acts ... has not been thought to confer upon the state authority to enforce it[;] other such acts, because of their *nature and quality* and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit.").

**31.** *See* Moore et al., *supra* note 16, § 108.44 (3d ed.2005) (citing 3d, 4th, 5th, 6th, 8th, 9th, and 10th Circuit cases which apply a "sliding scale" analysis to Internet contacts).

**32.** 952 F.Supp. 1119, 1124–25 (W.D.Pa.1997).

**33.** *See id.* at 1124.

**34.** *Id.*

**35.** *See id.*

**36.** *See id.*

**37.** *Id.*

**38.** *See, e.g., Axxess Techs., Inc. v. Keycards Int'l Inc.,* 1998 U.S. Dist. LEXIS 23223 (D.Ariz. March 27, 1998); *Haelan Prods. Inc. v. Beso Biological,* 1997 U.S. Dist. LEXIS 10565 (D.La. July 11, 1997).

**39.** 1997 U.S. Dist. LEXIS 10565 (D.La. July 11, 1997).

applied to determine whether advertisements in a nationally-circulated trade magazine were sufficient minimum contacts under the due process analysis:

(1) Whether the publications defendant advertised in circulated in the forum state;

(2) Whether the defendant advertised in these publications frequently, regularly, or occasionally;

(3) What amount of business was obtained from the advertisements; and

(4) Whether the defendant attempted to limit the states in which its product was marketed.[40]

The *Beso* court affirmed the assertion of specific personal jurisdiction for the trademark infringement that occurred over the Internet because the defendant advertised in four nationally-distributed publications which circulated in the state, maintained a nationwide toll-free number that it published in at least one trade magazine, and its Internet address and website were used to advertise and solicit business in the forum state.

¶ 19 In summary, under a minimum contacts analysis for Internet activity, "[p]roper inquiry must not focus on the mere quantity of contacts, but rather upon the quality and nature of those contacts as they relate to the claims asserted."[41] We do not intend to permit corporations to hide behind the excuse of ignorance in not knowing where they or their agents send email advertisements. However, before asserting jurisdiction arising out of those emails, a plaintiff must demonstrate a substantial connection to Utah created by the one email contact. Specifically, the plaintiff must establish that the corporation purposefully availed itself of the benefits of conducting business in Utah, knew its email may injure persons in Utah, or the nature and quality of the sent email supports the exercise of personal jurisdiction in Utah. One way, but not necessarily the only way, a plaintiff may establish that the nature and quality of the activity supports jurisdiction is to demonstrate that the defendant's conduct created an active or interactive relationship with Utah. However, we do not limit jurisdiction under the general "nature and quality" to the active/passive test.

¶ 20 In this case, the record is devoid of any evidence illustrating a *substantial* connection between Mleads and Utah arising out of this one email. Mleads lacked knowledge of the exact location to which its marketing agency would send the email. The record indicates, without any controverted evidence, that Mleads's marketing agency possessed the email address but not the geographic location to which the email would be sent or at which it would be retrieved. Thus, it is difficult in this particular case to rely on purposeful availment to satisfy minimum contacts.

¶ 21 However, even if Mleads, by sending this email through an agent, had purposefully availed itself of the benefits of conducting business in Utah, the contact does not provide the required minimum contacts. First, under the *Zippo* analysis, while the email Mleads sent was not clearly passive activity, it is also not the type of active contact that warrants automatic assertion of jurisdiction. Because the activity falls in the middle ground known as "interactive," we must focus on the nature and quality of the activity and the level of exchange it established between Mleads and Fenn. The email did not create an actual business transaction between Mleads and Fenn. The email contained, for example, no contract. It merely provided Fenn with information. Furthermore, although Mleads intended to solicit a business relationship with Fenn, the email is not reflective of an actual relationship or exchange between the two parties. And implicit in "interactive" activity is the exchange of information between parties. Fenn never responded to the email nor did she contact Mleads through any other means. Although the possibility existed for an exchange to occur, because it did not, these facts fall under the type of interactive activity for which the exercise of personal jurisdiction is improper.

¶ 22 Finally, analogizing to our analysis of magazine advertisement cases in *Haelan*

---

40. *Loumar v. Smith,* 698 F.2d 759, 763 (5th Cir.1983).

41. *Starways, Inc. v. Curry,* 1999 UT 50, ¶ 8, 980 P.2d 204.

*Products,* the fact that Mleads earns 1% of its revenue in Utah but does not engage in widespread advertising in the state suggests its contacts are at best insubstantial. In our past personal jurisdiction cases dealing with corporate advertisement, the record generally reflected additional contacts—telephone or fax communications, business transactions, or the like—within the state. For instance, we upheld the assertion of specific personal jurisdiction when a corporation advertised in Utah *and* its brokers regularly spoke on the phone with representatives and other contacts in Utah.[42] We also viewed advertisement in Utah as a substantial contact when the contact included direct oral communications between the parties.[43] However, we have never held, nor are we prepared to hold now, that a claim arising out of one email advertisement, brought by one party under a specific jurisdiction claim, without direct communications between the parties or proof of offense or injury to the recipient, establishes a substantial connection to Utah under the federal due process analysis. Accordingly, we hold that minimum contacts are not satisfied with this one email.

### B. The Exercise of Jurisdiction is Unreasonable

¶ 23 Even if minimum contacts were satisfied, the assertion of jurisdiction over Mleads would still violate the due process clause because it fails to comport with "the traditional notions of fair play and substantial justice."[44] In other words, the exercise of jurisdiction must be fair and reasonable. Generally, under the reasonableness factor, a court weighs and balances a variety of interests, including the inconvenience to the plaintiff and to the defendant, the regulatory concerns of the forum state, and the location of the witnesses and evidence.[45]

¶ 24 Adopting a blanket "one-email rule" imposes a substantial burden on corporations. Practically speaking, companies would be required to know the laws of each state and to be prepared to litigate in all fifty of them. Precisely because of this complication, the federal government preempted the Act and those similar in other states with CAN–SPAM, which states: "[t]here is a substantial government interest in regulation of commercial electronic mail on a nationwide basis."[46] The federal statute goes on to explain that state legislation regarding spam has been ineffective, "in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply."[47] In sum, even if Utah maintains a strong interest in regulating spam, the burden on businesses remains substantial.

¶ 25 We accordingly conclude that the reasonableness inquiry also requires us to reverse the court of appeals's holding. Exercising specific personal jurisdiction under these particular circumstances is unreasonable and violative of the traditional notions of fair play and substantial justice sustained by the federal due process clause.

### CONCLUSION

¶ 26 Asserting jurisdiction over Mleads violates due process. Mleads lacked sufficient minimum contacts with Utah because the nature and quality of this particular email advertisement failed to establish a substantial connection to Utah. Moreover, the exercise of jurisdiction is unreasonable under these circumstances. We reverse.

¶ 27 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice

---

42. *See Utah State Univ. of Agric. & Applied Sci. v. Sutro & Co.,* 646 P.2d 715 (Utah 1982).

43. *See Lee v. Frank's Garage & Used Cars, Inc.,* 2004 UT App 260, 97 P.3d 717.

44. *MFS Series Trust III v. Grainger,* 2004 UT 61, ¶ 10, 96 P.3d 927 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95) (1945).

45. *See generally* Moore et al., *supra* note 16, § 108.42.

46. 15 U.S.C. § 7701(b)(1) (2005).

47. *Id.* § 7701(a)(11).

NEHRING concur in Associate Chief Justice WILKINS' opinion.