2014 UT App 275

## THE UTAH COURT OF APPEALS

EMILY HUNSAKER,
Plaintiff and Appellant,
*v.*
AMERICAN HEALTHCARE CAPITAL,
Defendant and Appellee.

Opinion
No. 20130474-CA
Filed November 20, 2014

Fourth District Court, Spanish Fork Department
The Honorable Donald J. Eyre Jr.
No. 120300211

R. Brett Evanson and Bradley J. Weber, Attorneys
for Appellant

Greggory J. Savage, Michael D. Mayfield, and Beth
J. Ranschau, Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and JOHN A. PEARCE
concurred.

VOROS, Judge:

¶ 1    This appeal considers whether an out-of-state company
subjected itself to personal jurisdiction in Utah by advertising
that it was available to serve Utah clients, contracting with a
Utah resident to determine the value of her Utah company,
researching the value of that company using Utah-specific data,
receiving payment from a Utah client, and directing the finished
appraisal to a Utah recipient. We conclude that these contacts are
sufficient to support personal jurisdiction in Utah. We

accordingly reverse the district court and remand for further proceedings.

## BACKGROUND

¶ 2     Appellant Emily Hunsaker resides in Provo, Utah. She sued American HealthCare Capital, a California business owned and operated by Jack Eskenazi.

¶ 3     On its website, American HealthCare describes itself as "The Largest & Most Successful Seller of HealthCare Companies—Serving All 50 States Since 1990." The website contains a dropdown menu with a list of states, including Utah, in which it offers its services. After discovering the website through an internet search, Hunsaker contacted American HealthCare. She sought an appraiser to perform a valuation of Sunrise Home Health and Hospice, a business she partly owned.

¶ 4     The parties discussed the details of the valuation over the phone. American HealthCare notified Hunsaker's counsel that it would not begin work until it received payment. Hunsaker mailed a check for the required amount. The address on the check indicated that Hunsaker resided in Utah.

¶ 5     Throughout the course of the valuation process, the parties exchanged twenty-four emails. The emails sent by Hunsaker's counsel indicated that his office was located in Utah. Hunsaker's counsel also mailed American HealthCare a package of information about Sunrise. The parties communicated by telephone and email and exchanged packages by mail. The resulting valuation included geographic information about Sunrise and information specific to the Utah healthcare market. The valuation also included a financial analysis of Sunrise. American HealthCare sent the draft and final valuation reports

to Hunsaker in Utah.[1] American HealthCare valued Sunrise at $550,000.

¶ 6    Neither Eskenazi nor any of his employees visited Utah. They completed all work on the valuation in California, where Eskenazi lives. Indeed, American HealthCare has no Utah presence—no office, no real property, no bank account, and no phone number. It pays no Utah taxes.

¶ 7    After receiving the valuation report, Hunsaker concluded that American HealthCare had undervalued Sunrise, resulting in a loss to her, she alleges, of no less than $400,000. She sued, alleging breach of contract, negligence, and other theories. American HealthCare moved to dismiss. After a motion hearing based on the submissions of the parties, the district court dismissed the complaint for lack of personal jurisdiction.


ISSUE ON APPEAL

¶ 8    Hunsaker contends on appeal that the district court erred in dismissing her complaint for lack of personal jurisdiction over American HealthCare.


ANALYSIS

¶ 9    "When determining whether the trial court correctly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party." *Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 2, 137 P.3d 706 (citation and internal quotation marks omitted). Further, "[a]n appeal from a pretrial jurisdictional decision made only on documentary evidence presents legal questions which

---

1. The record is not clear whether American HealthCare mailed or emailed its final valuation report to Hunsaker. But the difference does not affect our analysis.

we review for correctness." *Id.* ¶ 7. Finally, if the trial court proceeds on documentary evidence alone to determine whether personal jurisdiction is proper, "the plaintiff is only required to make a prima facie showing of personal jurisdiction." *Neways, Inc. v. McCausland*, 950 P.2d 420, 422 (Utah 1997) (citation, internal quotation marks, and emphasis omitted).

¶ 10    "The authority of the state to hale a nonresident into a state court hinges on the ability to establish personal jurisdiction." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 9, 201 P.3d 944. Personal jurisdiction includes two categories: general jurisdiction and specific jurisdiction. "General personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992). Specific personal jurisdiction "gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state." *Id.*

¶ 11    Hunsaker relies on specific jurisdiction here. Our inquiry into specific jurisdiction considers three elements:

> [P]ersonal jurisdiction is only proper if we determine that (1) the Utah long-arm statute extends to defendant's acts or contacts, (2) plaintiff's claim arises out of those acts or contacts, and (3) the exercise of jurisdiction satisfies the defendant's right to due process under the United States Constitution.

*Fenn*, 2006 UT 8, ¶ 8; *see also In re W.A.*, 2002 UT 127, ¶ 14, 63 P.3d 607 (noting that the first consideration in assessing personal jurisdiction is whether Utah law confers personal jurisdiction over the nonresident defendant under "any Utah statute affording it personal jurisdiction, not just Utah's long-arm statute").

## I. Utah's Long-Arm Statute

¶ 12    Utah's long-arm statute resides in Utah Code sections 78B-3-201 through 209. Section 78B-3-205 provides that a person is subject to Utah jurisdiction if the person does any one of several enumerated acts. Utah Code Ann. § 78B-3-205 (LexisNexis 2012). Here, the district court concluded that Hunsaker's allegations satisfied this section. On appeal, Hunsaker defends that conclusion. And although American HealthCare now argues that Hunsaker "failed to demonstrate with adequate evidence the assertion [of] jurisdiction over [American HealthCare] under any one of the three subsections of Utah's long-arm statute," it did not contest the long-arm statute before the district court but went straight to the due process analysis.

¶ 13    That approach makes sense. Section 78B-3-201 of the Utah Code provides that the long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78B-3-201(3). Given the statute's breadth, "we often assume the application of the statute—and go straight to the due process issue." *Pohl*, 2008 UT 89, ¶ 19 (citation and internal quotation marks omitted).

¶ 14    We follow that approach here and proceed to the due process issue.[2]

---

2. Concluding that a defendant's contacts with the jurisdiction meet the requirements of the long-arm statute also satisfies the second element of *Fenn*'s three-part test—that the plaintiff's claim arises out of a defendant's acts or contacts with the state. *See Fenn v. Mleads, Inc.*, 2006 UT 8, ¶ 8, 137 P.3d 706. This result follows from the fact that section 78B-3-205 states that a defendant "is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to" the enumerated acts, including (1) "the transaction of any business within this state"; (2) "contracting to supply services or goods in this state"; or (3)

## II. Minimum Contacts

¶ 15   Federal due process requires that, "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend the 'traditional notions of fair play and substantial justice.'" *Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 10, 137 P.3d 706 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In assessing minimum contacts, the court should focus its analysis on "'the relationship among the defendant, the forum, and the litigation.'" *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 24, 201 P.3d 944 (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)).

¶ 16   To establish minimum contacts, "a defendant may purposefully avail itself of the benefits of conducting business in Utah." *Fenn*, 2006 UT 8, ¶ 13. "Courts often determine purposeful availment by considering whether the defendant deliberately created some relationship with the forum state that would serve to make that state's potential exercise of jurisdiction foreseeable." *Id.* (citation and internal quotation marks omitted). That is, "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).[3]

---

"the causing of any injury within this state whether tortious or by breach of warranty." Utah Code Ann. § 78B-3-205 (LexisNexis 2012).

3. "Admittedly, there is potentially a circular quality to *World-Wide Volkswagen*'s idea that jurisdiction must be 'foreseeable' in the sense that defendants 'should reasonably anticipate being haled into court' in the forum state. It is, after all, the jurisdictional principles themselves that would make jurisdiction foreseeable." Adam N. Steinman, *The Meaning of* McIntyre, 18 Sw. J. Int'l L. 417, 436–37 (2012) (footnotes omitted). Otherwise stated, "a potential defendant can only have such an expectation because the law so provides." Martin H. Redish, *Due Process,*

¶ 17    "Generally, a party purposefully avails itself of the benefits of conducting business in a state by deliberately engaging in significant activities within the state or by creating 'continuing obligations between himself and residents of the forum.'" *Fenn*, 2006 UT 8, ¶ 13 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Purposeful availment does not require physical presence in the jurisdiction:

> [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 434–35 (Utah 1998) (quoting *Burger King Corp.*, 471 U.S. at 476).

¶ 18    A party purposefully avails itself of the benefits of conducting business in a state when it has "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Pohl*, 2008 UT 89, ¶ 27. Further, "the place of injury is an important component of the minimum contacts analysis." *Id.* ¶ 25.

¶ 19    American HealthCare's actions satisfy all three elements of the purposeful-availment test. First, American HealthCare "committed an intentional act" by performing the valuation, exchanging phone calls and emails with Utah clients, soliciting payment from Utah clients, and sending its final report to a Utah

---

*Federalism, and Personal Jurisdiction: A Theoretical Evaluation*, 75 Nw. U. L. Rev. 1112, 1134 (1981).

resident. *See id.* ¶ 27. Hunsaker requested the valuation of her company for the purpose of selling it in Utah. American HealthCare then accepted her payment, completed the valuation in California, and sent it to Utah.

¶ 20   Second, American HealthCare's actions were "expressly aimed" at Utah. *See id.* American HealthCare held itself out as a company that performed valuations in Utah. It accepted payment originating in Utah to complete an appraisal of a business located in Utah. The completed valuation, sent to Hunsaker in Utah, contains information about the subject business as well as Utah-specific market data. Hunsaker alleged actions "expressly aimed at the forum state," which satisfies the second element of the purposeful-availment test. *See id.*

¶ 21   Third, accepting the factual allegations in the complaint as true, *see Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 2, 137 P.3d 706, we must conclude that American HealthCare's actions caused harm, the brunt of which was suffered—and which American HealthCare knew was likely to be suffered—in Utah. The complaint alleges that American HealthCare's failure to perform its valuation in keeping with industry standards resulted in monetary loss in Utah. American HealthCare knew Hunsaker's business was located in Utah. The valuation contained information about the healthcare market in Salt Lake County, Utah County, and Juab County, Utah. The valuation was directed to Hunsaker at her Provo, Utah, address. Given American HealthCare's knowledge that Hunsaker's business was located in Utah, it knew that the effects of a failure to perform the valuation properly would be felt in Utah.

¶ 22   "The fact that the contact with Utah occurred via the Internet does not change the analysis." *Id.* ¶ 12. "[C]ourts determining personal jurisdiction primarily on the basis of Internet activity generally focus on the nature and quality of activity that a defendant conducts over the Internet." *See id.* ¶ 15 (citation and internal quotation marks omitted).

¶ 23   The email contact between Hunsaker and American HealthCare established a business relationship. Through email contact, American HealthCare requested payment and scheduled conference calls. American HealthCare delivered the draft and final valuation reports. In so doing, it purposefully availed itself of the benefits of conducting business in this state "by deliberately engaging in significant activities within the state" and "by creating continuing obligations between [itself] and residents of the forum." *Id.* ¶ 13 (citation and internal quotation marks omitted). "The essential question is whether the defendant purposefully and voluntarily direct[ed] [its] activities toward the forum so that [it] should expect . . . to be subject to the court's jurisdiction based on [its] contacts with the forum." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 24, 201 P.3d 944 (alteration and omission in original) (citation and internal quotation marks omitted). American HealthCare did that here.

¶ 24   We reached the same conclusion on analogous facts in *Fort Pierce Business Park, LC v. Closing Resources, LLC*, 2009 UT App 357U. There we found that personal jurisdiction existed over an out-of-state defendant serving as an escrow agent for the sale of real property in Utah. *Id.* para. 9. The seller was a Utah resident, and the closing was to occur in Utah. *Id.* para. 4. The defendant sent two physical letters and two emails to the plaintiff. *Id.* para. 6. We held that because the defendant "communicated directly with parties in Utah for the purpose of completing a particular business transaction, as opposed to simply sending out mass emails for the purpose of soliciting business," the defendant company was subject to specific personal jurisdiction in Utah. *Id.* para. 7. Further, "[t]he business transaction itself involved property located in and owned by the State of Utah, subject to sale and purchase by Utah entities." *Id.* para. 9.

¶ 25   *Lee v. Frank's Garage & Used Cars, Inc.*, 2004 UT App 260, 97 P.3d 717, similarly supports our conclusion. There, an out-of-state dealer advertised an antique car for sale. *Id.* ¶ 3. After a Utah buyer expressed interest, the seller negotiated a sale. *Id.* After receiving payment, the dealer shipped the car to Utah.

*Id.* ¶ 4. We had "little difficulty" in concluding that the dealer's conduct and connection with Utah were such that it should reasonably have anticipated being haled into court here in the event of a dispute arising from the sale of the car. *Id.* ¶ 14.

¶ 26   American HealthCare seeks to distinguish *Lee* on the ground that the car dealer there shipped goods to a Utah resident, whereas American HealthCare performed its service entirely within California. But the record demonstrates that American HealthCare directed its valuation report to a Utah resident. The constitutional analysis does not turn on whether a product crosses the state line strapped to a transport truck or attached to an email. "Traditional notions of fair play" must be assessed in light of how people transact business here and now.[4]

¶ 27   Because the motion to dismiss was made on documentary evidence alone, "[Hunsaker] is only required to make a prima facie showing of personal jurisdiction." *See Neways, Inc. v. McCausland*, 950 P.2d 420, 422 (Utah 1997) (citation, internal quotation marks, and emphasis omitted). Hunsaker met the prima facie threshold requirement here, demonstrating that American HealthCare established a "substantial connection with [Utah] such that the defendant should reasonably anticipate being haled into court [here]." *See Pohl*, 2008 UT 89, ¶ 23 (citation and internal quotation marks omitted). We are satisfied that "the exercise of jurisdiction satisfies the defendant's right to due process under the United States Constitution." *See Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 8, 137 P.3d 706.

---

4. *Walden v. Fiore*, 134 S. Ct. 1115 (2014), on which American HealthCare relies, does not alter this result. That case held that a Georgia resident did not purposefully avail himself of conducting business in the state of Nevada by committing a tort in Georgia against a Nevada resident traveling in Georgia and by receiving unilateral communications from that Nevadan and his Nevada counsel. *Id.* at 1126.

CONCLUSION

¶ 28    The order of the district court is reversed and the case remanded for proceedings consistent with this opinion.

.    ──────────