**2016 UT App 174**

### THE UTAH COURT OF APPEALS

THOMAS MOWER,
Appellant,
*v.*
RICHARD MCBRIDE NIBLEY,
Appellee.

Memorandum Decision
No. 20150410-CA
Filed August 18, 2016

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 120401924

Douglas B. Thayer and Jordan K. Cameron,
Attorneys for Appellant

Mark F. James and Mitchell A. Stephens, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

TOOMEY, Judge:

¶1   Thomas Mower appeals the district court's dismissal of
his suit against Richard McBride Nibley, a resident of Japan, for
lack of general personal jurisdiction. Mower sought
compensatory and punitive damages for the destruction of
thousands of copies of a self-published book, titled "Straight
Talk from an American Cowboy: How to Achieve Business

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

Success in MLM," committed to Nibley's possession. On appeal, we must determine whether Nibley waived his right to object to personal jurisdiction and whether Nibley is subject to general personal jurisdiction as a result of his contacts with the state. As to the first question, we conclude that he did not. And because he is not domiciled in Utah and lacks sufficient contacts with the state, we conclude Utah cannot exercise general personal jurisdiction over Nibley. We therefore affirm.

BACKGROUND

¶2      In 2006, Mower wrote and self-published his book.[2] He then paid for its translation into Japanese and entrusted Nibley with tens of thousands of copies to sell in Japan on Mower's behalf. At that time Nibley was employed by SISEL International, LLC, a Utah company Mower owned, but at some point before Mower began this action, Nibley's employment was terminated.

¶3      Shortly after Mower arranged for Nibley to sell his book, Mower was sentenced to serve a thirty-three-month sentence in federal prison for tax fraud. *See United States v. Thompson*, 518 F.3d 832, 838–49 (10th Cir. 2008). During his prison term, Mower did not communicate with Nibley regarding the books. Nibley continued selling the books, purportedly using the revenue to fund the operating costs of selling them. As a favor, one of Nibley's friends in Japan agreed to store the books free of charge. But by 2009, the proceeds from book sales were no

---

2. "'When determining whether the trial court correctly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.'" *Hunsaker v. American HealthCare Capital*, 2014 UT App 275, ¶ 9, 340 P.3d 788 (quoting *Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 2, 137 P.3d 706).

longer enough to support operations, and the next year sales had slowed to a trickle, if not to a complete stop. Nibley's friend then informed Nibley that he could no longer store the books without charge, and Nibley allowed the warehouse owner to destroy the remaining books in March 2010.

¶4      Nibley has lived in Japan for more than thirty years, and has visited Utah only twice in the past ten years: once in 2008 for his father's funeral and again in 2011 for the birth of his granddaughter. He had no direct personal contact with Mower during either visit, but SISEL International served process on Nibley for an unrelated legal action while he was in Utah for his father's funeral.

¶5      As relevant to Mower's arguments, Nibley owned a partial interest in a rental property in Utah until it was sold at a sheriff's sale shortly after Mower filed his complaint in 2013. Nibley's wife retains her own partial interest in the property. According to Nibley's wife, "[T]here is no formal written agreement" regarding rent, and the renters pay a portion of the "rent money into [Nibley's] bank account on a monthly basis."

¶6      In January 2013, Mower served Nibley in Japan, through a process server operating under the auspices of the United States Consulate, suing under theories of conversion, unjust enrichment, accounting, and constructive trust. Specifically, he alleged that Nibley profited and continues to profit from the sale of Mower's books and demanded that Nibley return any books still in his possession. Nibley did not respond or appear to defend himself, and the court clerk entered default. *See* Utah R. Civ. P. 55(a). Nearly twenty months later, Mower filed a motion to enter judgment for the amount of $629,200, with post-judgment interest.

¶7      In November 2014, Nibley responded with a pro se fill-in-the-blank opposition form, in which he laid out his inability to sell the books and the events leading up to their destruction. He denied any wrongdoing and any responsibility for the

destruction of the books. He did not raise a personal jurisdiction objection, but did ask the court to deny Mower's motion to enter judgment and asked to dismiss the case.

¶8    Before a scheduled hearing on Mower's motion to enter judgment, Nibley filed two documents through counsel. In one, he moved the court to set aside entry of default and to dismiss Mower's action for lack of personal jurisdiction. In the other, he explained that his counsel's appearance was limited to challenging jurisdiction in order to void the entry of default, and was not a general appearance.

¶9    At the hearing on the motions, Mower argued Nibley had waived his right to challenge personal jurisdiction by "participating in this case" and by failing to raise the defense in his initial response. The court determined that Nibley's filing of his pro se opposition and sending emails to Mower's counsel and court clerks did not amount to the degree and type of participation sufficient to waive Nibley's right to challenge personal jurisdiction. Mower conceded that Utah could not exercise specific personal jurisdiction over Nibley, and the court rejected Mower's claim that Nibley's contacts with Utah were sufficient to establish general personal jurisdiction. Accordingly, the court granted Nibley's motion to set aside entry of default and dismissed Mower's complaint for lack of personal jurisdiction. Mower appeals.

ISSUES AND STANDARDS OF REVIEW

¶10    On appeal, Mower argues the district court erred in dismissing his suit for lack of general personal jurisdiction. We first address his argument that Nibley waived the right to challenge personal jurisdiction. If Nibley did not, we must then decide whether Nibley's contacts with Utah are sufficient to establish general personal jurisdiction.

¶11 Waiver presents a mixed question of law and fact. *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572. "[W]hether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a district court deference." *Id.*

¶12 "'[A]n appeal from a pretrial jurisdictional decision made only on documentary evidence presents legal questions which we review for correctness.'" *Hunsaker v. American HealthCare Capital*, 2014 UT App 275, ¶ 9, 340 P.3d 788 (quoting *Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 7, 137 P.3d 706). Further, "if the trial court proceeds on documentary evidence alone to determine whether personal jurisdiction is proper, 'the plaintiff is only required to make a prima facie showing of personal jurisdiction.'" *Id.* (quoting *Neways, Inc. v. McCausland*, 950 P.2d 420, 422 (Utah 1997)).

ANALYSIS

I. Waiver

¶13 Mower contends Nibley's chance to challenge jurisdiction ended when Nibley began participating in the suit by filing the November 2014 opposition to Mower's motion to enter judgment without objecting to the court's jurisdiction.[3]

---

3. On appeal, Nibley contends Mower's waiver argument is unpreserved. We disagree. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (citation and internal quotation marks omitted). Here, although Mower did not raise the issue in his written opposition to

(continued…)

¶14 Parties can waive an objection to jurisdiction by expressly waiving or by participating in the litigation without timely raising an objection or defense in a responsive pleading, such as an answer or reply. *See* Utah R. Civ. P. 12(b)(2), (h). But the Utah Supreme Court has held that in some circumstances a defendant's pro se response does not equate to a responsive pleading. *See, e.g., Parry v. Ernst Home Center Corp.*, 779 P.2d 659, 661 (Utah 1989) (determining that the defendant "did not waive its jurisdictional claim through its pro se response" because it had not asked for affirmative relief from the court); *Fibreboard Paper Products Corp. v. Dietrich*, 475 P.2d 1005, 1005–06 (Utah 1970) (concluding that the defendant's pro se letter denying responsibility for the bill sued upon did not constitute an answer or a general appearance). Indeed, even when the defendant captions his pro se response "answer," if the defendant merely denies responsibility for the injury or fails to ask for affirmative relief, the court has ruled that such a response cannot be construed as an answer or general appearance. *See Parry*, 779 P.2d at 661; *cf. Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1310 n.2 (Utah Ct. App. 1994) ("[T]he substance, not caption, of a motion is dispositive in determining the character of the motion."). Thus, if the defendant's only participation in the litigation before objecting to personal jurisdiction is a pro se response that does not amount to a pleading or answer, the defendant has not waived a jurisdiction objection. *See id.*

¶15 Here, for nearly two years after Mower filed this action, Nibley did not respond or communicate with the court. Between January and June of 2014, Nibley exchanged emails with Mower's counsel and corresponded with court clerks. But the only document he filed with the court was his pro se opposition—a typewritten boilerplate opposition form. In his

---

(…continued)
Nibley's motion to dismiss, he raised it orally at the hearing, and the court addressed and ruled on it, preserving the issue for appeal. *See id.*

opposition, Nibley denied responsibility for the destruction of the books and emphasized that all activities regarding the book occurred in Japan. He did not request a hearing. Rather, in one line, he merely asked the court to deny Mower's motion for entry of judgment. Furthermore, Nibley never made an appearance with the court. Thus, we conclude that the district court did not err when it found that Nibley's pro se opposition did not constitute a responsive pleading under rule 12 of the Utah Rules of Civil Procedure, and that Nibley did not waive his personal jurisdiction objection.

## II. Personal Jurisdiction

¶16   Mower argues that "[w]hen taken together, [Nibley's] foregoing contact with Utah has been, and continues to be, systematic and continuous, even though he is physically located in Japan."

¶17   "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its court." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice.'" *Id.* (omission in original) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

¶18   "The authority of the state to hale a nonresident into a state court hinges on the ability to establish personal jurisdiction." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 9, 201 P.3d 944. "There are two categories of personal jurisdiction: specific and general jurisdiction." *Id.* In *Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*, the Utah Supreme Court clarified the distinction between specific jurisdiction and general personal jurisdiction. 578 P.2d 850, 853 n.6 (Utah 1978). It explained that the most significant difference between general personal

jurisdiction and specific personal jurisdiction is the degree of the defendant's relationship with the forum state. *See id.* The court noted that specific personal jurisdiction "is the concept applicable to a long-arm statute, which requires only minimum local contacts." *Id.* "Where the defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only on claims arising out of the defendant's forum-state activity." *Id.* By contrast, general personal jurisdiction requires something much more than minimum contacts; it requires "substantial and continuous local activity." *Id.* "Once that is shown, defendant is subject to litigation related or unrelated to that business, as he is a 'pseudo resident.'" *Roskelley & Co. v. Lerco, Inc.*, 610 P.2d 1307, 1311 (Utah 1980). Thus, whether the forum state can assert personal jurisdiction over the defendant "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Abbott*, 578 P.2d at 853 n.10 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

¶19 Because Mower conceded that Utah cannot exercise specific personal jurisdiction over Nibley, this case focuses on the court's ability to exercise general personal jurisdiction. The United States Supreme Court has explained that, for purposes of determining general personal jurisdiction, "[a] person may submit to a State's authority in a number of ways." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011). For example, a person's "explicit consent" or physical "[p]resence within a State at the time suit commences through service of process" can support the exercise of general personal jurisdiction. *Id.* at 880. Additionally, "[c]itizenship or domicile—or, by analogy, incorporation or principal place of business for corporations—also indicates general submission to a State's powers." *Id.* at 881. In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), the Court reiterated this proposition; "'For an individual, the paradigm forum for the exercise of general jurisdiction is the

individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 564 U.S. at 924). "By treating general jurisdiction over corporations based on continuous and systematic contacts as analogous to jurisdiction at an individual's domicile, the Court may be signaling that such contacts will not separately establish a basis for general jurisdiction over an individual outside the individual's domicile or residence." Michael H. Hoffheimer, *General Personal Jurisdiction After* Goodyear Dunlop Tires Operations, S.A. v. Brown, 60 U. Kan. L. Rev. 549, 601 (2012).[4]

---

4. We note the United States Supreme Court has decided few cases, and Utah appellate courts even fewer, that have discussed the sufficiency of a defendant's contacts with the state to establish general personal jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 755–56 (2014) (explaining that there are few "post-*International Shoe* opinions on general jurisdiction"); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 925 (2011) (explaining that only a handful of decisions have considered "whether an out-of-state corporate defendant's in-state contacts were sufficiently 'continuous and systematic' to justify the exercise of general jurisdiction over claims unrelated to those contacts").

Indeed, since *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the United States Supreme Court's "decisions have elaborated primarily on circumstances that warrant the exercise of specific jurisdiction," *Goodyear*, 564 U.S. at 924, and the Supreme Court's decisions have largely involved corporate defendants, rather than individual defendants. *See* 4 Charles Alan Wright et al., Federal Practice & Procedure § 1069.5 (3d ed. 1998) ("By and large the preponderance of cases in the federal courts raising jurisdictional questions during the past several decades have involved corporations."); Mary Twitchell, *The Myth of General Jurisdiction*, 101 Harv. L. Rev. 610, 633 (1988) ("Courts routinely exercise jurisdiction over individual

(continued…)

¶20 If an individual defendant has neither consented to a state's exercise of general personal jurisdiction nor has been personally served in the state, for purposes of determining whether a state may exercise general personal jurisdiction over him, we must therefore look to the individual's domicile. *See Daimler*, 134 S. Ct. at 760–61; *Goodyear*, 564 U.S. at 924. Under federal jurisprudence, "an individual has only one domicile," *Martinez v. Bynum*, 461 U.S. 321, 340 (1983), which "usually requires bodily presence plus an intention to make the place one's home," *Lilly v. Lilly*, 2011 UT App 53, ¶ 13, 250 P.3d 994 (citation and internal quotation marks omitted). *See also* Restatement (Second) of Conflict of Laws § 11 (Am. Law Inst. 2016) ("Every person has a domicil[e] at all times and, at least for the same purpose, no person has more than one domicil[e] at a time."); *Domicile*, Black's Law Dictionary (9th ed. 2009) (defining "domicile" as "[t]he place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home").

---

(…continued)

defendants who are forum domiciliaries or habitual residents, and over corporations where they are incorporated or where they have their principal place of business, without regard to the nature of the cause of action."); *see also, e.g.*, *Goodyear*, 564 U.S. 915 (holding that North Carolina's courts could not exercise general personal jurisdiction over a corporate defendant); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (determining that Texas courts could not exercise general personal jurisdiction over a nonresident corporate defendant); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (holding that Ohio courts could exercise general personal jurisdiction over a foreign corporation without offending due process); *Ho v. Jim's Enters., Inc.*, 2001 UT 63, 29 P.3d 633 (considering whether Utah could exercise general personal jurisdiction over a corporate defendant).

¶21 Here, it cannot be disputed that Nibley's domicile is in Japan—his home is in Japan and he has made clear that he intends to stay there. Nibley has lived in Japan for thirty years, his wife is in Japan, he no longer owns property in Utah, and he has only visited Utah twice in the last ten years. Thus, under the recent string of cases from the United States Supreme Court, Utah may not exercise general personal jurisdiction over Nibley because he is not domiciled here. We therefore conclude the district court did not err in granting Nibley's motion to dismiss for lack of personal jurisdiction.

¶22 Even if we accept Mower's argument and assume that the analysis applicable to whether a state may exercise general personal jurisdiction over a *corporate* defendant applies to individual defendants, we cannot conclude that Utah has the authority to bind Nibley to judgment in its courts.

¶23 In the context of corporate defendants, the Utah Supreme Court recently explained that for a state to exercise general personal jurisdiction, a corporation's affiliations with the state must be more than just continuous and systematic. Rather, the defendant's contacts must be "'so "continuous and systematic" as to render [them] essentially at home in the forum State.'" *ClearOne, Inc. v. Revolabs, Inc.*, 2016 UT 16, ¶ 37, 369 P.3d 1269 (quoting *Daimler*, 134 S. Ct. at 761). The court emphasized "that a defendant's contacts with the state must be so extensive as to be 'comparable to a domestic enterprise in that State.'" *Id.* (quoting *Daimler*, 134 S. Ct. at 758 n.11).

¶24 There is no bright-line rule to determine which types of contacts are sufficient to render a defendant "essentially at home" in a forum state. A jurisdictional determination must therefore be based on a realistic evaluation of the quality of the relationship among the defendant, the controversy, and the forum. *See Ho v. Jim's Enters., Inc.*, 2001 UT 63, ¶ 8, 29 P.3d 633. "For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the 'defendant *himself*' creates with the forum, and must be analyzed with

regard to the defendant's contacts with the forum itself, not with persons residing there." *Walden v. Fiore*, 134 S. Ct. 1115, 1118 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also id.* at 1122–23. Thus, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 1122–23.

¶25 In his complaint, the only fact Mower asserted to demonstrate Nibley had sufficient contacts with Utah to exercise personal jurisdiction over him was that Nibley used to work for SISEL International, a Utah-based international company. In opposition to Nibley's motion to dismiss for lack of personal jurisdiction, Mower asserted that Nibley has had to appear and defend "in at least two other litigation matters in Utah." He further argued that Utah could maintain general personal jurisdiction over Nibley because, at the time Nibley was served in this suit, Nibley "was the record owner of property located [in Utah]." Nibley "continues to collect rental payments for property in Utah and deposits the money collected into his bank account," which Mower argued "constitut[es] 'substantial and continuous local activity.'" Finally, Mower argued that their business interactions regarding the book sales equated to Nibley transacting business within Utah because Mower is a resident of Utah.

¶26 When viewed in the light of the high standard for general personal jurisdiction set by the United States Supreme Court, we cannot conclude that Mower demonstrated that Nibley has sufficient contacts with Utah to render him "essentially at home" here. First, Mower's arguments rely on Nibley's dealings with Mower and SISEL International, not the state. But Nibley's contacts with Mower, especially those regarding this suit, cannot drive the jurisdictional analysis. *See ClearOne*, 2016 UT 16, ¶ 26 (citing *Walden*, 134 S. Ct. at 1122 to explain that due process requires that "the relationship [between the defendant, the litigation, and forum]" state must arise "out of contacts the defendant *himself* creates" (alteration in original) (citation and internal quotation marks omitted)); *accord Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*, 578 P.2d 850, 853 n.10 (Utah 1978). At the

evidentiary hearing, the parties agreed that all activities regarding the books occurred in Japan. Indeed, Mower even conceded that Utah could not exercise specific personal jurisdiction over Nibley. Nibley also demonstrated that he was not employed by SISEL International when Mower initiated this suit. Thus, Nibley's relationship with SISEL International and Mower have little to no bearing on our jurisdictional analysis.

¶27    Second, Nibley's ownership of property in Utah alone cannot support a sufficient relationship with the state to establish general personal jurisdiction. Moreover, a realistic evaluation of the quality of Nibley's relationship with the forum shows that the majority of Nibley's contacts with Utah are merely secondary to his property ownership.

¶28    Although Utah courts have not addressed this issue directly, the United States Supreme Court has explained that

> the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum state, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.

*Shaffer v. Heitner*, 433 U.S. 186, 207–08 (1977) (footnotes omitted). The *Shaffer* Court further explained that the "presence of property may also favor jurisdiction in cases such as in suits for injury suffered on the land of an absentee owner, where the defendant's ownership of the property is conceded but the cause

of action is otherwise related to rights and duties growing out of that ownership." *Id.* at 208.

¶29  But the existence of property in the forum state does not automatically confer jurisdiction over the defendant. *See id.* at 211–12. The *Shaffer* Court emphasized that while "jurisdiction based solely on the presence of property satisfies the demands of due process, . . . it is not decisive." *Id.* Thus, a defendant's ownership of property in the forum state is not dispositive—the ownership only increases the likelihood of a defendant having more significant contacts with the state. *See id.* Therefore, a court must still consider the relationship among the defendant, the litigation, and the state to make a fair determination of whether jurisdiction exists.

¶30  Mower argues that the requisite level of contacts is reached because Nibley not only owned property in Utah, but also pays taxes in Utah and collects monthly rents. Any such contacts are merely incidental to his ownership of property within the forum state, however, and Mower has offered no evidence that Nibley actually pays taxes on the property. Indeed, from the record, the only continuous or systematic contact Nibley seems to have with Utah is a monthly deposit of rental income in his bank account. Mower has not provided any evidence demonstrating otherwise.

¶31  As the Utah Supreme Court recently clarified, "The limited number of Supreme Court cases on this point clearly require something more than just some revenue or contracts to qualify the [defendant] as 'at home' in that state." *ClearOne, Inc. v. Revolabs, Inc.*, 2016 UT 16, ¶ 40, 369 P.3d 1269. "Indeed, as a matter of common sense, there are likely many companies that have no official operations in Utah that still derive some revenue from Utah consumers. It would strain the Supreme Court's standard of general jurisdiction beyond recognition" to conclude that an individual domiciled in Japan can fairly be said to be "essentially at home" in Utah merely because he once owned a rental property and continues to

perform the necessary secondary obligations associated with his wife's ownership of the property, such as receiving rent and paying taxes. *See id.* ¶ 41.

¶32 Of course, the presence of property in a state may have an impact on the personal jurisdiction inquiry. Indeed, "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Shaffer*, 433 U.S. at 207. Yet, when the property that serves as the basis for jurisdiction is completely unrelated to the plaintiff's cause of action, jurisdiction is not reasonable. *See id.* at 207–08. The fact that renters deposit monthly rent for a single property that Nibley used to own in Utah is not contact "so extensive as to be 'comparable to a domestic enterprise'" in Utah. *See ClearOne*, 2016 UT 16, ¶ 37 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 n.11 (2014)). We therefore conclude that the district court did not err in dismissing Mower's complaint for lack of personal jurisdiction.

CONCLUSION

¶33 In sum, because Nibley's pro se opposition was not a responsive pleading, we conclude the district court did not err when it found that Nibley had not waived his personal jurisdiction objection. Moreover, because Nibley—a resident of Japan—is not domiciled in Utah, we conclude that Utah courts cannot maintain general personal jurisdiction over him. And even if we assume that the analysis applicable to corporate defendants applied here, as Mower urges, Nibley's few attenuated contacts with Utah, including his former relationship with Mower, SISEL International, and property ownership, are not "so continuous and systematic as to render him essentially at home" in the state. *See ClearOne*, 2016 UT 16, ¶ 37. Consequently, we conclude that the court did not err when it dismissed this case for lack of personal jurisdiction. We affirm.

_____