**2019 UT App 109**

### THE UTAH COURT OF APPEALS

MICHELE FELIX,
Appellee,
*v.*
NOVELIS CORPORATION,
Appellant.

Opinion
No. 20180216-CA
Filed June 20, 2019

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 150908525

Alexander Dushku and Justin W. Starr, Attorneys
for Appellant

Gilbert L. Purcell, James P. Nevin, Daniel J. Morse,
Kimberly J. Chu, and Gary Brayton, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

APPLEBY, Judge:

¶1     This lawsuit stems from Raymond Felix's alleged contact with asbestos and resulting death from mesothelioma in 2014. Michele Felix, acting as the personal representative on behalf of Felix's legal heirs (Estate), filed a lawsuit in 2015 against multiple defendants who allegedly exposed Felix to asbestos. The Estate added Novelis Corporation to the lawsuit in 2017 and Novelis moved to dismiss for lack of personal jurisdiction. The district court denied the motion, concluding that Novelis had sufficient minimum contacts with Utah to support specific personal jurisdiction. We reverse.

BACKGROUND

¶2 Felix died in 2014 from mesothelioma. In 2015 the Estate sued multiple defendants who allegedly exposed him to asbestos. The Estate filed an amended complaint in 2017, adding Novelis as a defendant.

¶3 Novelis's predecessor in interest, Metal Goods, allegedly exposed Felix to asbestos in the 1950s through its artificial snow product called "Snow Drift."[1] Metal Goods manufactured Snow Drift until 1954. During its operation, Metal Goods manufactured and packaged Snow Drift in Missouri and sold it to two national companies: Woolworth and Kresge (later re-named Kmart).

¶4 Felix's sibling (Sibling) stated in a declaration that the Felix family used "multiple boxes of 'Snow Drift'" to decorate their Christmas trees "between the years of 1950 and 1955." Sibling "believe[d]" they purchased Snow Drift from a Woolworth department store in Utah. The boxes were labeled "Snow Drift" and contained "Christmas season themed illustrations depicting snow, and text touting the product's properties and uses, including that it was asbestos." Sibling recalled seeing "the name of the manufacturer, 'Metal Goods Corporation, St. Louis'" on the side of the box.

¶5 Novelis moved to dismiss the complaint for lack of personal jurisdiction. Novelis asserted it does not own real property or business offices in Utah, does not have a workforce or manufacturing operations here, or advertise its products here.

---

1. Alcan Aluminum Corporation subsequently purchased Metal Goods and Novelis was created through a reorganization of Alcan. Novelis does not dispute that it is the successor in interest to Metal Goods. Novelis is a Texas corporation with its principal place of business in the state of Georgia.

Novelis asserted it possessed no information "that Metal Goods (or Alcan) sold Snow Drift in Utah, or had offices, employees, inventory, real estate, or facilities in Utah." Novelis similarly asserted that it had no information that Metal Goods sold or advertised any products in Utah. It argued that neither "Novelis, nor its predecessors, have any contacts with the State of Utah," and therefore the Estate's claims against it should be dismissed for lack of personal jurisdiction.

¶6      The district court denied the motion. It ruled that the Estate failed to establish general jurisdiction[2] but concluded that the Estate submitted sufficient evidence to support specific jurisdiction. The court found that the evidence "support[ed] the conclusion that the Snow Drift product was sold for several years at Woolworth stores in Utah." Further, "Snow Drift was sold under the Metal Goods name, to Woolworth stores in Utah, and Utah consumers could reasonably expect Metal Goods and its [successor] in interest [Novelis] to stand behind its product and be answerable for any defects."

¶7      Novelis filed an interlocutory appeal challenging the court's denial of its motion to dismiss.

## ISSUE AND STANDARD OF REVIEW

¶8      The issue on appeal is whether the district court erred in denying Novelis's motion to dismiss for lack of personal jurisdiction. "An appeal from a pretrial jurisdictional decision made only on documentary evidence presents legal questions which we review for correctness." *Mower v. Nibley*, 2016 UT App 174, ¶ 12, 382 P.3d 614 (quotation simplified). "If the trial court proceeds on documentary evidence alone to determine whether personal jurisdiction is proper, the plaintiff is only required to

---

2. The Estate does not dispute general jurisdiction on appeal.

make a prima facie showing of personal jurisdiction." *Id.* (quotation simplified).

## ANALYSIS

¶9    Novelis argues the district court erred in denying its motion to dismiss for lack of specific personal jurisdiction. It asserts the court lacks specific jurisdiction over it because the Estate demonstrated that Metal Goods merely placed its "product into the stream of commerce" and that product "happened to end up in Utah."

¶10    "Specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state." *Venuti v. Continental Motors Inc.*, 2018 UT App 4, ¶ 10, 414 P.3d 943 (quotation simplified). Specific jurisdiction must satisfy Utah's long-arm statute, Utah Code Ann. § 78B-3-201(3) (LexisNexis 2018), as well as the Due Process Clause of the Fourteenth Amendment. *Venuti*, 2018 UT App 4, ¶ 10. Because Utah's long-arm statute extends jurisdiction to the fullest extent allowed by the Due Process Clause, we move directly to that analysis. *Parry v. Ernst Home Center Corp.*, 779 P.2d 659, 661 (Utah 1989).

¶11    The Due Process Clause requires that before a court can exercise specific personal jurisdiction over a nonresident defendant, the defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation simplified). "When a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, courts will generally conclude that due process is satisfied." *Venuti*, 2018 UT App 4, ¶ 12 (quotation simplified).

¶12    The primary dispute in this appeal is whether the Estate has satisfied the "stream of commerce" test. "The 'stream of commerce' theory of specific jurisdiction developed in product-liability cases to address the situation where the seller does not come in direct contact with the forum state but does so through intermediaries such as retailers or distributors." *Id.* ¶ 22 (quotation simplified). To satisfy the stream of commerce test, a plaintiff must show that the sale of the product "'is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011).

¶13    In this case, the Estate has—at most—shown that Metal Goods sold Snow Drift to third-party distributors and the product ended up in Utah. The district court noted during the hearing on the motion to dismiss that "the only contact we have is the fact that Snow Drift was purchased from a Woolworth store here in Utah and that's about it." The court erroneously concluded that this is enough to support specific jurisdiction. "[M]erely placing a product into the stream of commerce knowing that it could be swept into the forum state does not subject a manufacturer to personal jurisdiction." *Venuti*, 2018 UT App 4, ¶ 27. The stream of commerce theory requires "*some act* by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (emphasis added) (quotation simplified).

¶14    Methods of showing the additional act necessary to establish specific jurisdiction include "'designing the product for

the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as a sales agent in the forum State.'" *Parry*, 779 P.2d at 663 (emphasis omitted) (quoting *Asahi v. Metal Industry Co. v. California*, 480 U.S. 102, 112 (1987)).

¶15 The Estate argues it has shown the additional act necessary to establish specific jurisdiction through "advertising in the forum State." *Id.* (quotation simplified). It contends that Metal Goods advertised its product in Utah by placing its company name on boxes of Snow Drift. The packaging also "contained promotional text, on-product advertising, touting Snow Drift's desirable features and uses."

¶16 Simply placing a company label on a package is an insufficient act to subject a manufacturer to specific jurisdiction. The additional act necessary to establish specific jurisdiction must be targeted at the forum in some way. In *Parry*, our supreme court was confronted with this same issue. 779 P.2d at 660. The plaintiff in *Parry* was injured in Utah while splitting logs with a maul manufactured by one of the defendants. *Id.* The defendant was a Japanese manufacturer that had no direct contact with Utah. *Id.* It knew its "products would be distributed for retail sales throughout the western United States and possibly in any state in the United States." *Id.* But there "was no evidence proffered that [it] directly sold or advertised any of [its] products in Utah." *Id.* The supreme court concluded that awareness of potential sales in Utah is insufficient to establish specific jurisdiction. *Id.* at 667. The court rejected the argument that selling a product in Utah constitutes an advertisement sufficient to support specific jurisdiction. *Id.* at 666; *see also Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 22, 137 P.3d 706 (recognizing that an advertising campaign may establish sufficient minimum contacts when the contact includes direct communications between the parties).

¶17    Here, the labeling on the package does not demonstrate that Metal Goods made any deliberate engagement in "significant activities within the state." *Fenn*, 2006 UT 8, ¶ 13. While the labeling was specific to the Christmas season, it was not specific to Utah. The Estate argues that putting the name "Metal Goods" on the packaging showed an intent to advertise and stand behind its product. This misses the point. Affixing a company name to the packaging is not aimed at Utah specifically and therefore does not exhibit purposeful availment.

¶18    We conclude the Estate failed to demonstrate that Novelis has sufficient minimum contacts to establish specific jurisdiction in Utah. Haling Novelis into a Utah court under these facts offends "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quotation simplified).

CONCLUSION

¶19    The district court erred in concluding that the Estate made a prima facie showing that the court had specific jurisdiction over Novelis. Because Novelis does not have sufficient minimum contacts with Utah, we reverse.

_____